James **LOMBARDO**, Plaintiff–Appellant,

v.

Bruce **WARNER**, in his official capacity as Director of the Oregon Department of Transportation, Defendant–Appellee.

No. 02–35269.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 2003.

Filed Dec. 29, 2003.

Alan R. Herson, Jacksonville, OR, for the Plaintiff-Appellant.

Janet A. Metcalf, Assistant Attorney General, Salem, OR, for the Defendant-Appellee.

Before B. FLETCHER, FERGUSON, and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Dissent by Judge B. FLETCHER

## OPINION

TASHIMA, Circuit Judge:

James Lombardo appeals the dismissal of his First Amendment and Due Process challenges to the highway billboard provisions of the Oregon Motorist Information

Act ("OMIA"). He seeks declaratory and injunctive relief on two grounds: (1) that the OMIA is a content-based regulation that favors commercial over non-commercial speech; and (2) that the OMIA vests unbridled discretion in state officials and lacks necessary procedural safeguards.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we uphold the OMIA as a content-neutral time, place, and manner restriction.

## BACKGROUND

Lombardo initially alleged that the OMIA violated his First Amendment rights by prohibiting him from displaying on his residence a 12-square-foot sign reading "For Peace in the Gulf." We remanded an earlier appeal in 1999 when Oregon revised the OMIA to permit signs not exceeding 12 square feet. On remand, Lombardo amended his complaint under 42 U.S.C. § 1983 to allege that the OMIA violated his constitutional rights by preventing him from displaying a 32-square-foot sign reading "For Peace in the Gulf." Defendant moved to dismiss the amended complaint "for lack of standing and lack of a justiciable controversy, and failure to state a claim." A magistrate judge recommended that the action be dismissed because the OMIA equally burdens commercial and non-commercial speech and is not content based. The magistrate judge also recommended the dismissal of Lombardo's as applied challenge to the OMIA because Lombardo had not applied for a variance to display his sign. The district court adopted the magistrate judge's findings and recommendation, and dismissed the action. This timely appeal followed.

## THE OMIA

The OMIA prohibits all "outdoor advertising signs" except those that existed in

---

1. Because Lombardo does not challenge it, we do not discuss the governmental exception, Or.Rev.Stat. § 377.735(1)(a), under the OMIA.

commercial or industrial zones prior to June 12, 1975. Or.Rev.Stat. § 377.715. The OMIA defines an "outdoor advertising sign" as:

[A] sign "designed, intended or used to advertise, inform or attract the attention of the public as to: (a) Goods, products or services which are not sold, manufactured or distributed on or from the premises on which the sign is located; (b) Facilities not located on the premises on which the sign is located; or (c) Activities not conducted on the premises on which the sign is located.

*Id.* at § 377.710(23). If a sign existed prior to June 12, 1975, the sign may remain provided a permit is obtained by the owner. *Id.* at §§ 377.712(1), 377.725(2) & (14).[2] Similar to other state billboard laws, the OMIA contains an exemption that permits "on-premises signs" that "attract ... attention [to] [a]ctivities conducted on the premises on which the sign is located[.]" *Id.* at § 377.710(22). Thus, a sign is permissible without a permit or variance, irrespective of the commercial or non-commercial nature of the sign, if it identifies activities conducted on the premises. Also excepted from the general prohibition are "[t]emporary sign[s] on private property" not larger than 12 square feet, as well as "[s]igns of a governmental unit, including but not limited to traffic control or regulatory devices, legal notices, or warnings." *Id.* at § 377.735(1)(a), (b). The OMIA permits a party to obtain, "for good cause shown," a variance from the temporary sign restriction, including the temporary size limitation. *Id.* at § 377.735(2).

The OMIA specifically prohibits the Director of Transportation ("Director") from considering "the content of the sign in

deciding whether to allow a variance." *Id.* Owners of non-compliant signs are subject to the following remedial procedures:

[I]f the owner of the sign is readily identified and located, the director shall notify the owner that the sign is in violation of ORS 377.700 to 377.840 and that the owner has 30 days from the date of the notice within which to make the sign comply, to remove the sign or to request a hearing before the director within the time specified in the notice.

*Id.* at § 377.775(3)(a). If the billboard owner does not follow one of these courses within 30 days, the Director can remove the sign, and the owner is liable for the associated costs. *Id.* at § 377.775(3)(b), (5). A non-compliant sign is declared a nuisance, and a person who violates any provision of the OMIA can be fined not more than $100 or imprisoned for not more than 30 days, or both. *Id.* at §§ 377.775(1), 377.992(1).

## STANDARD OF REVIEW

■ A dismissal for failure to state a claim is reviewed de novo. *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000). The court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party. *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 984 (9th Cir.2000). A dismissal for failure to state a claim is appropriate only where it appears that the plaintiff can prove no set of facts that would entitle him to relief. *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir.1997).

## ANALYSIS

Lombardo contends that because the First Amendment prohibits laws that favor

---

**2.** Permits for signs may be transferred between persons and, subject to certain geographical restrictions, signs may be relocated either within a commercial or industrial zone or to another commercial or industrial zone. Or.Rev.Stat. § 377.767.

commercial over non-commercial speech he should be permitted to display a billboard reading "For Peace in the Gulf" because while the OMIA permits commercial establishments to display billboards advertising activities conducted on the premises, the OMIA prohibits him from freely expressing his own political beliefs outside his own home.[3] We have rejected this same argument on at least two previous occasions. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813–14 (9th Cir. 2003); *Outdoor Sys., Inc., v. City of Mesa*, 997 F.2d 604, 609–612 (9th Cir.1993). We do so again here.

## I.

In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 515, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Supreme Court declared unconstitutional a billboard ordinance that prohibited offsite signs but permitted onsite signs for commercial purposes. Writing for the plurality, Justice White set forth two standards by which to examine billboard regulations. Under the *Metromedia* standards, "an ordinance is invalid if it [1] imposes greater restrictions on non-commercial than on commercial billboards or[2] regulates non-commercial billboards based on their content." *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir.1988) (citing *Metromedia*, 453 U.S. at 513, 516, 101 S.Ct. 2882).

We have addressed the onsite/offsite distinction in a number of cases since *Metromedia*.[4] We recently summarized this

case law in *Clear Channel*, stating that the distinction between onsite and offsite signs contravenes *Metromedia* if the statute "prevent[s] the erection of onsite non-commercial signs." 340 F.3d at 814 (citing *Ackerley Communications of the Northwest, Inc. v. Krochalis*, 108 F.3d 1095 (9th Cir.1997), and *Outdoor Sys.*, 997 F.2d 604). The *Clear Channel* court relied on *Outdoor Systems* in stating that the "key consideration is whether a sign ordinance is neutral with respect to non-commercial messages." *Id.* We stated that neutrality is maintained if the regulation allows non-commercial messages on either onsite or offsite signs. *Id.* We also reiterated the rule first expressed in *Outdoor Systems* that even if billboard regulations have a greater negative impact on non-commercial than commercial messages, the regulation does not have the "effect of preferring commercial speech," in violation of *Metromedia*, as long as non-commercial messages may be displayed on both onsite or offsite signs. *Id.* (citing *Outdoor Sys.*, 997 F.2d at 612).

■ After summarizing the case law that has emerged since *Metromedia*, *Clear Channel* held that the billboard provisions in the Los Angeles Municipal Code ("LAMC"), did not violate plaintiff's free speech rights because the LAMC's distinction between offsite and onsite signs permitted both commercial and non-commercial messages. The LAMC (like the OMIA) defines an offsite sign in terms of a

---

3. We assume, as do the parties, that Lombardo does not conduct any activity on his premises that relates to "peace in the gulf."

4. *See, e.g., Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir.1996) (holding unconstitutional an ordinance that required on-site signs to relate to commercial nature of property); *Outdoor Sys.*, 997 F.2d at 610 (holding that city sign codes that permit signs to "carry either a

commercial or a non-commercial message" equally burden commercial and non-commercial speech); *Nat'l Adver.*, 861 F.2d at 247; *see also Wheeler v. Comm'r of Highways*, 822 F.2d 586, 592–93 (6th Cir.1987) (upholding as constitutional regulation distinguishing between onsite and offsite billboards as not favoring commercial speech but as distinguishing between on-site and off-site signs).

"sign which displays any message directing attention to a business, product, . . . or any other commercial [or non-commercial] message, which is generally conducted, sold, manufactured, produced, offered or occurs *elsewhere than on the premises* where such sign is located." *Id.* at 812 (emphasis added) (quoting LAMC § 91.6203).[5] The LAMC also provides the same exemption for onsite signs, requiring the billboard to display a message, commercial or non-commercial, that relates to conduct on the premises. *Id.*

*Clear Channel* is controlling. The primary argument raised by Lombardo is that the billboard law negatively affects non-commercial speech because fewer residents will be able to display signs that relate to activity conducted on the premises, whereas commercial establishments will be able to display their signs advertising their activity with relative ease. This argument fails under our precedent. In *Outdoor Systems,* we addressed the same contention, and stated that "[e]ven were the number of non-commercial signs to decrease disproportionately, the statute would not be invalid on that basis because the decrease would be the result of decisions made by individual sign owners." 997 F.2d at 612. *Clear Channel* reaffirmed this holding. 340 F.3d at 814. The OMIA defines on premises signs with respect to location alone, not content. Or. Rev.Stat. § 377.710(22). The key consideration is whether the sign relates to activity conducted on the premises. Although commercial billboards may prevail under the OMIA's legislative scheme, neutrality is nonetheless maintained because the regulation allows non-commercial messages on either onsite or offsite signs. *Id.* We follow *Clear Channel* and hold that the OMIA is a content neutral time, place, and manner restriction.

## II.

■ Lombardo also contends that the OMIA unconstitutionally gives the Director unbridled discretion to grant permit applications. This argument fails. Licensing procedures are invalid if the government official authorizing such permits is given "unbridled discretion" in deciding whether to deny or permit the expressive activity at issue. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The danger is that absent standards controlling the exercise of discretion, government officials may determine "who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *Id.* at 763–64, 108 S.Ct. 2138. The OMIA does not pose the danger identified in *Lakewood.* First, the OMIA expressly precludes content-based decisions by prohibiting officials from "consider[ing] the content of the signs in deciding whether to allow a variance." Or.Rev.Stat. § 377.735(2). Second, as in other cases considering this issue, "judicial precedent" provides adequate guidelines to state officials interpreting billboard codes. *See*

---

5.  The City of Los Angeles removed the bracketed language ("or non-commercial") in March 2003. *Clear Channel* interpreted this change as effectively creating an exemption for non-commercial off-site signs. 340 F.3d at 815. The court concluded that such an exemption "allayed" any "remaining concern" that the on-site/off-site distinction works a content-based discrimination. *Id.*

The OMIA does not include an express "exemption" for non-commercial signs. Neutrality, however, requires only that non-commercial signs are not singled-out for disfavored treatment based on the ideas or views expressed. *See Turner Broad. Sys. v. FCC,* 512 U.S. 622, 642–43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

*Clear Channel,* 340 F.3d at 816; *Outdoor Sys.,* 997 F.2d at 613.[6]

## CONCLUSION

For the foregoing reasons, we conclude that the OMIA is a valid content-neutral time, place, and manner restriction and that it does not place unbridled discretion in the hands of state officials. Accordingly, the judgment of the district court is

**AFFIRMED.**

B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. The OMIA allows commercial messages where non-commercial speech is not permitted, draws content-based distinctions among non-commercial billboards and includes an essentially standardless variance procedure. I would reverse the district court's dismissal of Lombardo's First Amendment claims because billboard regulations that prefer commercial speech or that apply content-based rules to non-commercial speech are presumptively unconstitutional and because the First Amendment requires licensing schemes to include narrowly-drawn, definite standards capable of meaningful judicial review.

### I.

The OMIA imposes substantial restrictions on core protected speech. *See Kaplan v. County of Los Angeles,* 894 F.2d 1076, 1079 (9th Cir.1990) ("Political speech lies at the core of the First Amendment's protections."). James Lombardo could erect a 60–square–foot sign that says "Lombardo Lives Here," but he cannot erect a 60–square–foot sign that says "Vote Bush." Or.Rev.Stat. § 377.725(13) (providing that no permits may be issued for new offsite, or "outdoor advertising," signs); Or.Rev.Stat. § 377.735(c) (allowing onsite, or "on-premises," signs). If Lombardo worked from an office in his home, he could post a commercial sign advertising his services, but he could not display his "For Peace in the Gulf" billboard.[1] Or.Rev.Stat. § 377.725(13); Or.Rev.Stat. § 377.735(c).

The distinctions the OMIA draws among these signs do not depend solely on neutral factors like size, shape or location. Instead, the OMIA treats these signs differently because of their content. *See* Or.Rev.Stat. § 377.710(22) (defining "on-premises sign" as a sign that advertises, *inter alia,* "[a]ctivities conducted on the premises"); Or.Rev.Stat. § 377.710(23) (defining "outdoor advertising sign" as, *inter alia,* a sign that advertises "[a]ctivities not conducted on the premises"); *see also* Or.Rev.Stat. § 377.735(4) (creating an exception to the general prohibition on outdoor advertising signs for signs not exceeding six square feet that "provide information for the safety or convenience of the public"). Such content-based distinc-

---

**6.** Citing *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), Lombardo also argues that the OMIA fails to provide a reasonable time period within which variances must be processed. This argument also fails. We upheld a similar regulatory scheme in *Outdoor Systems,* stating that the lack of an express time limit does not render the ordinance invalid. 997 F.2d at 613.

**1.** The OMIA allows temporary 12–square–foot signs on private property, Or.Rev.Stat. § 377.735(1)(b), but Lombardo's 32–foot–sign is too big to qualify for this exception. Although private landowners may seek a variance from the limitations in § 377.735(1)(b), it is far from clear that Lombardo could demonstrate the "good cause" necessary to win a variance for his 32–square–foot sign. Or.Rev. Stat. § 377.735(2). Of course, Lombardo would not be required to seek a variance from the size limitations in § 377.735(1)(b) if his were an onsite sign entitled to a permit.

tions are inconsistent with the First Amendment, particularly where, as in the case of the OMIA, they operate to allow commercial messages where non-commercial speech is not permitted.

### A.

A billboard statute is presumed to be invalid if it prefers commercial over non-commercial speech. *See Nat'l Adver. Co. v. City of Orange,* 861 F.2d 246, 248 (9th Cir.1988). In *Metromedia, Inc. v. City of San Diego,* six justices of the Supreme Court agreed that the First Amendment affords greater protection to non-commercial billboards than to commercial ones. 453 U.S. 490, 513, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion); *id.* at 536, 101 S.Ct. 2882 (Brennan, J., concurring in the judgment); *see also Nat'l Adver.,* 861 F.2d at 248 ("Merely treating non-commercial and commercial speech equally is not constitutionally sufficient. The first amendment affords greater protection to non-commercial than to commercial expression."). A rule that allows commercial messages where non-commercial messages are not permitted "inverts" this First Amendment hierarchy. *Metromedia,* 453 U.S. at 513, 101 S.Ct. 2882; *see also Ackerley Communications of Mass., Inc. v. City of Cambridge,* 88 F.3d 33, 39 n. 15 (1st Cir.1996).

Writing for *Metromedia's* plurality, Justice White explained that San Diego's billboard ordinance impermissibly preferred commercial to non-commercial speech because it allowed onsite commercial messages but generally prohibited non-commercial messages:

> Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of non-commercial messages.

*Metromedia,* 453 U.S. at 513, 101 S.Ct. 2882. "The fact that [Oregon] may value commercial messages relating to onsite goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others." *Id.* "In other words, if the owner of Joe's Hardware wants to replace his 'Joe's Hardware' sign with a sign saying 'No Nukes,' he must be allowed to do so." *Ackerley Communications of Mass., Inc. v. City of Somerville,* 878 F.2d 513, 517 (1st Cir.1989) (explaining that this result "follows logically from the First Amendment's value structure" because "if a commercial message overrides the city's aesthetics and safety interests, any message that is at least as important in the First Amendment hierarchy also must override those interests"); *see also Nat'l Adver. Co. v. Town of Babylon,* 900 F.2d 551, 554 (2d Cir.1990) (affirming injunction against Islip billboard ordinance because, *inter alia,* the ordinance would not allow a business like "Joe's Famous Pizza" to install a non-commercial offsite sign stating that "Abortion is Murder") (internal quotation marks omitted).

The OMIA violates these principles in two respects. First, the OMIA's onsite/offsite distinction does not allow non-commercial speech wherever a commercial message would be permissible. *Cf. Metromedia,* 453 U.S. at 513, 101 S.Ct. 2882. The owner of an Oregon hardware store could not replace his "Buy Hammers Here" sign with a "Lower Taxes!" message unless he conducted some tax-related activity in his hardware store. Or.Rev.Stat. § 377.725(13) (prohibiting permits for new offsite signs). Second, the OMIA includes

a provision that explicitly prefers some offsite commercial speech to offsite non-commercial speech. Notwithstanding the general prohibition against new offsite signs, the OMIA provides that permits may be issued for new outdoor advertising signs that qualify as "business identification signs." Or.Rev.Stat. § 377.726(1)(a). Business identification signs are commercial in nature because they are intended to draw the public's attention to a nearby business enterprise. Or.Rev.Stat. § 377.710(2) (defining "business identification sign" as a sign not exceeding 32 square feet that "identifies a business and that displays only information necessary to adequately describe the business and the direction and distance to the business"). Thus, the exception for business identification signs in § 377.726(1)(a) prefers certain offsite commercial signs to offsite non-commercial signs.

With these rules, Oregon has effectively decided that in some cases "the communication of commercial information concerning goods and services ... is of greater value than the communication of non-commercial messages." *Metromedia,* 453 U.S. at 513, 101 S.Ct. 2882. Because the OMIA's provisions invert the First Amendment's hierarchy of non-commercial and commercial speech, I would reverse.

### B.

The OMIA also is flawed in a second respect: it draws content-based distinctions among non-commercial messages. Content-based regulations of non-commercial speech are presumptively unconstitutional. *Foti v. City of Menlo Park,* 146 F.3d 629, 637 (9th Cir.1998).

As Justice White explained in *Metromedia,* regulatory choices are limited in the area of non-commercial speech:

Although [San Diego] may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of non-commercial speech to evaluate the strength of, or distinguish between, various communicative interests .... Because some non-commercial messages may be conveyed on billboards throughout the commercial and industrial zones, San Diego must similarly allow billboards conveying other non-commercial messages throughout those zones.

453 U.S. at 514–15, 101 S.Ct. 2882 (citations omitted) (invalidating content-based exceptions to San Diego's general ban on non-commercial messages). Following *Metromedia,* we have repeatedly held that billboard regulations that draw content-based distinctions among non-commercial messages are subject to strict scrutiny. *Desert Outdoor Adver., Inc. v. City of Moreno Valley,* 103 F.3d 814, 820 (9th Cir.1996); *Nat'l Adver.,* 861 F.2d at 249.

Our analysis in *Foti v. City of Menlo Park* provides a test for content neutrality that can easily be applied here. In *Foti* we held that exceptions to a non-commercial sign regulation make the regulation content-based when, in order to enforce the regulation, "a law enforcement officer must 'examine the content of ... signs to determine whether the exemption applies.'" *Id.* at 636 (holding exemptions for real estate signs and safety, traffic and public informational signs to be content-based) (quoting *Desert Outdoor,* 103 F.3d at 820) (alteration in *Foti* ).

The OMIA unquestionably fails *Foti's* test. First, the OMIA includes an exception for small offsite signs that "provide information for the safety or convenience of the public." Or.Rev.Stat. § 377.735(4).[2]

**2.** The implementing regulation for this provi-

sion defines "public safety signs" as "signs

We have repeatedly held that exceptions for informational, directional or safety-related non-commercial signs are content-based. *Foti*, 146 F.3d at 634 n. 3, 636 (exception for "[s]afety, traffic or other public informational" signs); *Desert Outdoor*, 103 F.3d at 820 (exception for "official notices and directional or informational signs"); *see also Nat'l Adver.*, 861 F.2d at 248–49 (citing, *inter alia*, exception for "[s]mall nonelectric convenience signs which facilitate traffic flow and safety . . . provided such signs do not exceed six square feet"). Under our precedent, the OMIA's content-based safety or convenience exception, standing alone, requires reversal.[3]

The OMIA also violates *Foti's* rule in a second respect: the statute's basic distinction between onsite and offsite messages depends for its enforcement on an examination of the content of every noncommercial billboard.[4] As a result, we should, following *Foti*, hold the onsite/offsite distinction to be content-based.[5]

that are necessary for the safety of the public such as, but not limited to, signs with legal notices or warnings or signs warning of danger to the public." Or. Admin. R. 734–060–0185(4). "Public convenience signs" are defined as "signs that are necessary for guiding the public in the use of the state highway system such as, but not limited to, signs identifying motor carrier bus stops or fare zone limits of common carriers or signs identifying rest rooms or freight entrances." *Id.*

**3.** I also note that the OMIA includes a second problematic exception for offsite non-commercial signs posted by government entities, Or.Rev.Stat. § 377.735(1)(a). *See Metromedia*, 453 U.S. at 494, 514, 101 S.Ct. 2882 (disapproving a governmental sign exception); *Foti*, 146 F.3d at 637 ("[W]e are troubled by the wholesale exemption for government speech."). Although Lombardo does not point specifically to this provision, the state draws our attention to it in its own brief.

Lombardo does "specifically and distinctly" raise the issue of the OMIA's safety or convenience exception at page eleven of his opening brief. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994).

**4.** The fact that a law enforcement officer would need two kinds of information in order to apply the OMIA's onsite/offsite distinction—information about a given sign's content and information about activities conducted onsite—does not undermine my conclusion that the distinction is content-based. In *Foti* we considered an exemption to a billboard ordinance that allowed "[s]afety, traffic, or other public information" signs that had been "erected or maintained by a public officer or employee in the performance of a public duty or by a contractor, utility company or other

persons responsible for public safety, peace and welfare." *Id.* at 634 n. 3 (quoting Menlo Park Municipal Code § 8.44.020(3)(e)). *Foti* held this exemption content-based even though a law enforcement officer would need two kinds of information in order to determine whether the exemption applied—information about the sign's content and information about who posted the sign. *Id.* at 636.

**5.** The majority cites *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994), for the proposition that the OMIA is necessarily content-neutral because it is viewpoint neutral. I do not agree that *Turner Broadcasting* supports the majority's position. *Turner Broadcasting* cites with approval *Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992), which held a prohibition on political speech near polling places to be content-based even though the prohibition was viewpoint neutral. *Turner Broad.*, 512 U.S. at 643, 114 S.Ct. 2445. Although *Turner Broadcasting* does state that the "principal inquiry in determining content neutrality" is "whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys," it also recognizes that "the mere assertion of a content-neutral purpose [is not] enough to save a law which, on its face, discriminates based on content." *Id.* at 642, 114 S.Ct. 2445 (internal quotation marks omitted).

The OMIA on its face discriminates on the basis of content: government content, informational, convenience or safety content, and onsite content is allowed; content that does not fall within the statute's exception or that is not related to a billboard's specific location

## C.

As a regulation that prefers commercial speech and that draws content-based distinctions among non-commercial speech, the OMIA can survive First Amendment scrutiny only if it is the least restrictive means to further a compelling interest. *Foti*, 146 F.3d at 637 (setting out test for content-based regulations). *Cf. also Metromedia*, 453 U.S. at 513, 101 S.Ct. 2882 (holding preference for commercial speech unconstitutional where San Diego did not explain how such a preference furthered its safety and aesthetic goals).

If we assume Oregon's lofty goals are compelling, Or.Rev.Stat. § 377.705,[6] it nonetheless seems unlikely that the OMIA's onsite/offsite distinction furthers the state's safety and aesthetic goals. In order to justify the distinction's effect of preferring commercial messages, Oregon must explain "how or why non-commercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city."[7] *Metromedia*, 453 U.S. at 513, 101 S.Ct. 2882. Oregon must also explain how the OMIA's content-based onsite/ offsite distinction among non-commercial messages furthers the state's goals.[8] *See Ackerley Communications of Mass., Inc. v. City of Cambridge*, 88 F.3d 33, 38 (1st Cir.1996) (holding that where a city distinguishes between onsite and offsite non-commercial messages, the city must justify that distinction in relation to its asserted goals).

Finally, Oregon must prove that the OMIA represents the least restrictive method available to further the state's interests. With respect to the statute's onsite/offsite distinction, this, too, appears to be nearly an impossible task. Other cities and states with similar goals have avoided much of the OMIA's effect on non-commercial speech with exemptions for all non-commercial messages or with substitution clauses that at least allow onsite or offsite non-commercial billboards wherever any commercial billboard is allowed. *See, e.g.,* Seattle Municipal Code § 23.84.036 (providing that non-commercial signs are always to be considered onsite); *see also*

is not allowed. *Turner Broadcasting* does not undermine my conclusion that these distinctions make the OMIA content-based and, in any event, *Turner Broadcasting* cannot control the result in this billboard case. *See Metromedia*, 453 U.S. at 501, 101 S.Ct. 2882 ("Each method of communicating ideas is a law unto itself and that law must reflect the differing natures, values, abuses and dangers of each methods. We deal here with the law of billboards.") (internal quotation marks and footnote omitted).

6. Oregon explains the purpose of the OMIA as follows:

To promote the public safety; to preserve the recreational value of public travel on the state's highways; to preserve the natural beauty and aesthetic features of such highways and adjacent areas; to provide information about and direct travelers to public accommodations, services for the traveling public, campgrounds, parks, re-creational areas, and points of scenic, historic, cultural and educational interest, it is the policy of this state and the purpose of [the OMIA]:
(1) To establish official information centers and motorist informational signs. . . .
(2) To provide for publication and distribution of official guidebooks and other publications.
(3) To prohibit the indiscriminate use of other outdoor advertising.
(4) To provide motorists, where feasible, a telephone emergency, information and reservation system for lodging.
Or.Rev.Stat. § 377.705.

7. Oregon must make this same showing with respect to the exception for business identification signs.

8. Oregon must make this same showing with respect to the statute's content-based exception for public safety or convenience signs.

*Clear Channel Outdoor Inc. v. City of Los Angeles,* 340 F.3d 810, 814–15 (9th Cir. 2003) (discussing amendment to Los Angeles Municipal Code that "makes it impossible that a non-commercial sign would be designated an 'off-site' sign"); *Valley Outdoor, Inc. v. County of Riverside,* 337 F.3d 1111, 1113 (9th Cir.2003) (discussing amendment to Riverside ordinance that allows any non-commercial message to be substituted for a commercial message on any otherwise lawful sign); *Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 608–609 (9th Cir.1993) (discussing substitution provisions in Tucson and Mesa sign codes and express exemption for non-commercial messages in Mesa's code); *Nat'l Adver. Co. v. City of Denver,* 912 F.2d 405, 408 (10th Cir.1990) (discussing Denver ordinance that prohibits off-site commercial signs while allowing on-site commercial signs and off-site or on-site non-commercial signs). *Cf. Southlake Prop. Assocs., Ltd. v. City of Morrow,* 112 F.3d 1114, 1119 (11th Cir.1997) (construing ambiguous ordinance as not applying onsite/offsite distinction to non-commercial messages); *Nat'l Adver. Co. v. Town of Babylon,* 900 F.2d 551, 556–57 (2d Cir.1990) (explaining that after *Metromedia* municipalities responded "by permitting non-commercial messages wherever commercial messages were allowed" and faulting Islip for not making a similar change, even though "it would have been a simple matter to draft such a provision"). Oregon has not taken either of these steps.[9]

Because Lombardo's case was dismissed on the pleadings, however, Oregon has not yet had a chance to defend its billboard statute. I would reverse the district court's dismissal but allow Oregon a chance to prove on remand that the OMIA onsite/offsite distinction and various exceptions further compelling interests in the least restrictive way possible. *See Foti,* 146 F.3d at 637.

### D.

Contrary to the majority's suggestion, we have never upheld a billboard statute that applies an onsite/offsite distinction as the OMIA does. In *National Advertising* we invalidated a billboard statute that included content-based exemptions for some non-commercial messages. 861 F.2d at 249. We expressly reserved the question of whether an onsite/ offsite distinction standing alone would be permissible, although we noted language in *Metromedia* that suggests such a distinction is unconstitutional.[10] *Id.,* 861 F.2d at 249 n. 3

---

9. The OMIA does provide that "[a]dvertising or information on the display surface of a sign may be changed or cutouts may be attached or removed within the sign area without obtaining a permit." Or.Rev.Stat. § 377.725(7). The state has not argued that this statutory section operates like the substitution provisions at issue in *Outdoor Systems,* however, and a comprehensive review of the statute reveals that § 377.725(7) cannot be read as allowing offsite messages that would otherwise be prohibited. The statute's detailed provisions and implementing regulations intended to prevent new offsite advertising signs would be rendered meaningless if § 377.725(7) were interpreted to allow otherwise prohibited messages.

  In addition, permits issued under the OMIA last only for one year, Or.Rev.Stat. § 377.725(6), and sign owners must re-apply annually to renew their permits. Or.Rev.Stat. § 377.725(4). *See also* Or.Rev.Stat. § 377.725(2) (providing that permit applications must "include a precise description of the sign"). Given the clear prohibition against permits for new outdoor advertising signs, Or.Rev.Stat. § 725(13), a sign owner could not be issued a renewed permit if the owner's application revealed that the sign's content had been changed to include an offsite message.

10. Our sister circuits are split on whether an onsite/offsite distinction is itself unconstitutional. The First Circuit invalidated a Cambridge billboard ordinance that applied an onsite/offsite distinction to non-commercial messages. *Ackerley Communications of*

("Though not squarely before the *Metromedia* Court, the plurality opinion may suggest an offsite/onsite distinction between non-commercial messages would be invalid."). The Tucson and Mesa sign codes at issue in *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 608 (9th Cir. 1993), included "substitution" provisions that allowed non-commercial messages where any commercial message was allowed. Mesa also expressly excepted all non-commercial billboards from its definition of offsite signs. *Id.* at 608–609.

In *Desert Outdoor*, we struck down a Moreno Valley billboard ordinance that imposed greater restrictions on offsite signs than on onsite signs, limited onsite signs to commercial messages, and included content-based exemptions for certain non-commercial signs. 103 F.3d at 820–21. Although *Desert Outdoor* did not extend its analysis to decide whether an onsite/offsite distinction applied both to commercial and non-commercial messages would be permissible, language in the panel's opinion suggests that it would not. *Desert Outdoor* explained that the Moreno Valley ordinance was flawed because in some areas a business owner could "have an onsite commercial sign" but could not display "an 'Elect Jane Doe' sign." *Id.* at 820. Application of the OMIA has this same effect, even if its specific provisions that prefer some commercial speech and that exempt certain non-commercial messages are set aside.

The only challenge to Seattle's billboard regulation raised in *Ackerley Communications of the Northwest Inc. v. Krochalis*, 108 F.3d 1095 (9th Cir.1997), focused on commercial speech. *See* Seattle Municipal Code § 23.84.036 (providing that non-commercial billboards are always to be considered onsite signs). We considered two versions of Riverside's sign ordinance in *Valley Outdoor, Inc. v. County of Riverside*, 337 F.3d 1111 (9th Cir.2003); although it was not clear from the text of the first version whether the ordinance applied an onsite/offsite distinction to non-commercial speech, the ordinance was amended to provide expressly that non-commercial messages were not subject to the onsite/offsite distinction. *Id.* at 1113. A "grandfather" provision in the amended ordinance might have subjected Valley Outdoor's signs to the older, less clear version of Riverside's ordinance, *id.* but we affirmed the district court's judgment striking down that provision. *See id.* at 1113–15.

The majority relies heavily on our most recent billboard case, *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810 (9th Cir.2003), but *Clear Channel* does not control the result here. The OMIA includes an explicit preference for "business identification signs" and content-based distinctions among non-commercial messages that were not at issue in *Clear Channel*. *Clear Channel* does state that "[t]here is no support in *Metromedia* for the proposition that the onsite/ offsite distinction *itself* places an impermissible content-based burden on non-commercial speech," 340 F.3d at 814, but all of *Clear Channel's* observations regarding the constitutionality of an onsite/offsite distinction

---

Mass., Inc. v. City of Cambridge, 88 F.3d 33, 37–38. The Third, Sixth and Eleventh Circuits have upheld the onsite/offsite distinction as a content-neutral time, place or manner restriction. *Rappa v. New Castle County*, 18 F.3d 1043, 1067 (3d Cir.1994); *Messer v. City of Douglasville*, 975 F.2d 1505, 1509–1511 (11th Cir.1992); *Wheeler v. Comm'r of Highways*, 822 F.2d 586, 589–90 (6th Cir.1987). But cf. *Southlake Prop. Assocs., Ltd. v. City of Morrow*, 112 F.3d 1114, 1116–19 (11th Cir. 1997) (noting that *Messer* depended on fact that Douglasville's ordinance applied to a historic district and construing the City of Morrow's onsite/offsite distinction as applying only to commercial messages).

applied to non-commercial speech are non-precedential dicta.[11]  *See Best Life Assurance Co. of Cal. v. Comm'r*, 281 F.3d 828, 833–34 (9th Cir.2002) (defining dicta).  Because *Clear Channel* read an amendment to the Los Angeles ordinance at issue as having exempted non-commercial messages from any onsite/offsite distinction, *Clear Channel's* analysis of whether such a distinction would be permissible under *Metromedia* was not necessary to the court's holding.  340 F.3d at 815.

## II.

Lombardo also raises a First Amendment challenge to the OMIA's variance provision.  Or.Rev.Stat.  § 377.735(2).  Lombardo argues that the variance procedure is constitutionally impermissible because it requires a showing of "good cause" but vests unbridled discretion in Department of Transportation officials to determine what constitutes "good cause."  *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) ("[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.") (invalidating newsrack permitting ordinance that gave Lakewood's mayor unfettered discretion to grant or deny a permit).  The variance provision's implementing regulation includes a non-comprehensive list of two factual situations that "may" constitute good cause, but it does not set out any clear or definite standards.  Or. Admin. R. 734–060–0175 ("Good cause may include a showing that the content of the sign will not be visible to the public if the sign is 12 square feet or less, or a showing of hardship caused by the inability to use a previously-manufactured sign that complies with former size restrictions for temporary signs.").

The majority concludes that the variance provision's "good cause" requirement is constitutionally acceptable because the statute states explicitly that content should not be considered in deciding whether a variance will be granted.  Or.Rev.Stat. § 377.35(2).  However, as currently written, the OMIA's variance provision allows a government official to grant or deny a variance simply by stating that "good cause" has or has not been shown.  *See City of Lakewood*, 486 U.S. at 769, 108 S.Ct. 2138 (newsrack ordinance placed too much discretion in mayor where "nothing in the law as written require[d] the mayor to do more than make the statement 'it is not in the public interest' when denying a permit application").  Without "narrow, objective, and definite standards to guide the licensing authority," the OMIA's bare promise of content neutrality can never be tested.  *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)).  *See also Thomas v. Chicago Park District*, 534 U.S. 316, 323, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) ("Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content.");  *Desert Outdoor*, 103 F.3d at 818–819 ("[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the

---

**11.**  *Clear Channel's* characterization of *Metromedia* also contradicts our observation in *National Advertising* that language in the *Metromedia* plurality opinion "may suggest an offsite/onsite distinction between non-commercial messages would be invalid."  *Nat'l Adver.*, 861 F.2d at 249 n. 3.

licensing authority, is unconstitutional.") (quoting *Shuttlesworth*, 394 U.S. at 150–51, 89 S.Ct. 935).

The requirement of narrow and definite standards is the mechanism the Supreme Court has repeatedly chosen to ensure that licensing officials do not allow content or viewpoint to affect their decisions:

[T]he absence of express standards makes it difficult to distinguish, "as applied," between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power. Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.

*City of Lakewood*, 486 U.S. at 758, 108 S.Ct. 2138. *See also Thomas*, 534 U.S. at 323, 122 S.Ct. 775 ("[E]ven content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression.... We have thus required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review."). Absent objective, judicially-enforceable standards, it will never be possible to ensure that con-

tent or viewpoint was not taken into account when applying the OMIA's variance provision in any given case. Where, as here, a variance scheme "involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted."[12] *Forsyth County*, 505 U.S. at 131, 112 S.Ct. 2395 (internal quotation marks and citations omitted). For this reason, I would reverse the district court's dismissal of Lombardo's First Amendment challenge to the OMIA's variance procedure.

III.

Billboards traditionally have been an important medium of communication. *Metromedia*, 453 U.S. at 501, 101 S.Ct. 2882. However, since they may be unattractive or even distracting, we can agree that billboard regulation is appropriate without agreeing that the OMIA passes constitutional muster. *See Nat'l Adver.*, 861 F.2d at 249 ("Cities are not powerless to regulate billboards containing non-commercial messages. The City of Orange remains free to redraft its ordinance to conform to the Constitution."). Many states and cities have chosen statutes that exempt non-commercial messages or that include substitution clauses allowing non-commercial messages to replace commercial messages, but Oregon has adhered to a statute that allows commercial speech where non-commercial speech is not permitted, that

---

**12.** I note that the majority's citations to *Clear Channel* and *Outdoor Systems* are inapposite because those cases addressed challenges to permitting procedures that turned on onsite/offsite and commercial/non-commercial distinctions that have been sufficiently elucidated in case law. *Clear Channel*, 340 F.3d at 816; *Outdoor Sys.*, 997 F.2d at 613. Lombardo does not argue that the OMIA's *permit* process fails for lack of definite standards; he

directs his due process challenge only to the § 377.735(2) variance, which does not turn on the onsite/offsite or commercial/ non-commercial nature of a sign. The availability of a variance turns only on the applicant's ability to demonstrate "good cause," Or.Rev.Stat. § 377.735(2), and the majority points to no cases that provide adequate guidelines for applying this "good cause" requirement.

draws content-based distinctions among non-commercial messages and that includes a standardless variance procedure.

*Metromedia* and our own billboard cases have held that billboard statutes may not prefer commercial to non-commercial speech, may not include content-based exemptions for certain non-commercial billboards, and may not depend for enforcement on examination of non-commercial billboards' content. The OMIA fails each of these tests, and the majority's reliance on non-binding dicta in *Clear Channel* cannot stand against the Supreme Court and Ninth Circuit precedent discussed above.

Because Lombardo's First Amendment challenge to the OMIA should not have been dismissed on the pleadings, I dissent.