**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAUL D.S. EDWARDS,
        *Plaintiff-Appellant,*

v.

WELLS FARGO AND COMPANY,
        *Defendant-Appellee.*

No. 06-16892

D.C. No.
CV-05-01253-ECR

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, District Judge, Presiding

Argued and Submitted
May 15, 2008—San Francisco, California

Filed May 19, 2010

Before: Andrew J. Kleinfeld and N. Randy Smith,
Circuit Judges, and Richard Mills,* District Judge.

Opinion by Judge Kleinfeld

---

*The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

## COUNSEL

Paul D.S. Edwards, *pro se*, Las Vegas, Nevada.

Jay Earl Smith, Smith Larsen & Wixom, Las Vegas, Nevada, for defendant-appellee Wells Fargo Bank.

## OPINION

KLEINFELD, Circuit Judge:

We address what seems like a simple question, but because of the language of the applicable regulatory framework, it turns out not to be simple: does a credit card issuer have to resolve disputes about purchases with the consumer who used the card to buy the goods, or just with the person who obtained the card and authorized issuance of another card to the consumer? The answer is, the latter.

## FACTS

The district court decided this case on a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Both parties presented affidavits and other material outside of the pleadings, in support of and in opposition to, the motion. The district court did not exclude any of these materials, and took them into account in his decision, so "the motion must be treated as one for summary judgment under Rule 56."[1] Accordingly, we take the facts as established by the evidence to the extent that they are undisputed, and in favor of the respondent, Edwards, to the extent material facts are genuinely in dispute,[2] and treat this as an appeal from summary judgment.

Wells Fargo Bank issued a Visa credit card to Hamid Maghamfar. Saeid Maghamfar was added to the account about five years later. Both Maghamfar brothers signed a form by which they agreed to be "equally responsible for the repayment of current and future charges on the account and will have equal access to all account services and features."

For reasons not disclosed in the record, Hamid Maghamfar subsequently arranged with Wells Fargo and Paul Edwards to have an additional credit card issued on the Maghamfar account to Edwards, the plaintiff and appellant. They made the arrangement on the phone, with Maghamfar and Edwards making the call together and talking to some unknown Wells Fargo Visa representative. Their arranging for someone other than the person paying the bills to the bank to get a credit card is like the common scenario where parents get a credit card for a child in college.

---

[1]Fed. R. Civ. P. 12(d); *see also* Fed. R. Civ. P. 56; *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44 (9th Cir. 2003).

[2]*Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1117-18 (9th Cir. 2008); *Lombardo v. Warner*, 353 F.3d 774, 776 (9th Cir. 2003).

Edwards submitted a sworn affidavit saying that the Wells Fargo representative required him to provide identifying information including his social security number, and told him on the phone that he would be personally liable, as well as the Maghamfars, for any purchases he made on the card. Wells Fargo, however, submitted an affidavit swearing that they would not hold Edwards personally responsible. There is no form in the record signed by Edwards like the one that the Maghamfars signed promising the bank to be responsible for charges.

Edwards had numerous disputes with merchants with whom he used the Visa card. They range from a $36.28 charge at Kinko's that Edwards claims he never incurred, to $794.95 for a grey suit that Edwards says was defective and not properly altered. Edwards wrote to Wells Fargo, and for a while, thinking that he was a lawyer representing the Maghamfars, Wells Fargo resolved the disputes with him. (Edwards never claimed to be the Maghamfars' lawyer, but cited and quoted the Fair Credit Billing Act and Regulation Z in detail, so Wells Fargo assumed he was.) Eventually Wells Fargo realized that Edwards was writing on his own behalf, not on behalf of the Maghamfars, and quit responding to him about his billing disputes. The bank wrote to the Maghamfars instead, and charged their account when they did not respond.

Edwards sued Wells Fargo for actual, statutory, and punitive damages under the Fair Credit Billing Act, a subpart of the Truth in Lending Act,[3] and under the Nevada Unfair Consumer Practices Act.[4] The basis for these claims are the seven billing disputes, all well under $1,000, that Wells Fargo did not resolve with Edwards and with respect to which Wells Fargo did not respond to Edwards' correspondence. On

---

[3]15 U.S.C. § 1640; *see also* Fair Credit Billing Act, Pub. L. No. 93-495, tit. III, § 301, 88 Stat. 1500, 1510-11 (1974).

[4]Nev. Rev. Stat. §§ 598.0915, .0923, .0973, .0977.

appeal, Edwards makes no argument regarding his Nevada state law claims, so we do not address those claims.

## ANALYSIS

Summary judgment is proper if the pleadings and other evidence before the court "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] We review the grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party.[6]

Edwards argues that as a consumer, cardholder, and user of a credit card issued on the Maghamfar account, he was entitled to the dispute resolution procedures that federal law requires a credit card issuer to follow.[7] He correctly points out that under the Truth in Lending Act[8] and regulations implementing it,[9] a credit card issuer owes an obligation to respond to, investigate and resolve disputes regarding purchases. The question in this case is to whom that obligation is owed.

[1] The statute says that the creditors' billing dispute duties run to the "obligor" on the account.[10] Neither the statute nor the regulations define "obligor," so we use the ordinary legal

---

[5]Fed. R. Civ. P. 56(c).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).

[7]The federal statutes are like Russian matryoshka dolls, stacked one within another, so we refer to the United States Code sections for improved clarity. The popular names for legislation that enacted the provisions at issue are the Fair Credit Billing Act, the Consumer Credit Protection Act, and the Truth in Lending Act.

[8]15 U.S.C. § 1666.

[9]Regulation Z, 12 C.F.R. §§ 226.1-226.34.

[10]15 U.S.C. § 1666(a) ("If a creditor, within sixty days . . . receives . . . written notice from an obligor . . . the creditor shall . . . send a written acknowledgment [of the claimed billing error] to the obligor.").

understanding in this context, one who is obligated to pay a debt.[11] And here we run into the first potential difficulty, that Wells Fargo told Edwards on the telephone that he was an obligor, but told the district court in a sworn affidavit that he was not. After this dispute had crystallized and before Edwards filed suit, Wells Fargo put in writing its current position that Edwards is not obligated to pay Wells Fargo for charges on the credit card.

In spite of stating that the Wells Fargo representative told him he would be personally liable on the card, Edwards does not claim to be an obligor on the account. Instead, he argues that because he was the "cardholder" and "consumer," Wells Fargo owed him the obligation regardless of whether he was the obligor. Wells Fargo argues that although Edwards was an "authorized user" he was not the "account holder" or "obligor," so he lacked "standing" to pursue the claim. The bank uses the word "standing" to mean, not its usual Article III meaning, but merely that the statute and regulations establish no duty running to him. Because Edwards argues that he is entitled to the billing dispute procedures because he is a "cardholder," "consumer" and "user" of the card, and not because he is also an "obligor" under the statute, we assume for purposes of decision that Wells Fargo does not owe any duty to Edwards as an "obligor" under the statute.

We need to detour into vocabulary to make the arguments comprehensible. A "cardholder" under the statute means a "person to whom a credit card is issued or a person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person."[12] Edwards is a "cardholder" under the first of these alternative definitions regardless of whether the telephone call in which he was told

---

[11]Black's Law Dictionary (7th ed. 1999) (defining "obligor" as "[o]ne who has undertaken an obligation; a promisor or debtor).

[12]15 U.S.C. § 1602(m). *See also* 15 U.S.C. § 1602(d) (defining "person" as a "natural person or organization").

he would have to pay would also make him a "cardholder" under the second. Wells Fargo issued a Visa credit card to him in his name to be used for consumer credit purposes. Whatever duty Wells Fargo owed to a cardholder, it owed to Edwards.

[2] The statutory language discussing the credit card issuers' duties means that the duties were not owed to Edwards, just to the Maghamfars because they, and not he, were the obligors. The statute says that if the creditor receives timely written notice from "the obligor" of a claimed billing error, the creditor must send timely written acknowledgment to the "obligor" within strict time limits.[13] If we could stop there, this would be an easy case. Edwards does not argue that he is an "obligor" and is entitled to the procedures owed to obligors. We cannot stop there, though, because the implementing regulations create a dense fog around the straightforward statutory language.

[3] The statute expressly delegates authority to the Federal Reserve Board to issue implementing regulations.[14] The Federal Reserve Board has done so in a lengthy document called "Regulation Z," accompanied by extensive official, published staff interpretation. The matter is so complexified by regulation Z that it took a Supreme Court opinion just to say (in the context of company credit cards issued to individual employees) what a consumer is[15] even though the word consumer is defined by the regulation,[16] or perhaps because the word is defined by the regulation.

---

[13] 15 U.S.C. § 1666.

[14] 15 U.S.C. § 1604 ("The Board shall prescribe regulation to carry out the purposes of this subchapter.").

[15] *See Am. Express Co. v. Koerner*, 452 U.S. 233, 241-45 (1981).

[16] 12 C.F.R. § 226.2(a)(11) (defining "consumer" as a "cardholder or natural person to whom consumer credit is offered or extended"); *see also* 12 C.F.R. § 226.2(a)(12) (defining "consumer credit" as "credit offered or extended to a consumer primarily for personal, family, or household purposes").

Edwards argues that regardless of whether he is an obligor, the statute requires the bank to deal with him on his billing disputes because it has a duty to deal with "consumers." The policy of the Act, he correctly argues, as declared in the statute, is to protect "consumers" regarding extension of credit.[17] The bank argues that there was no extension of credit, but that is incorrect, since Edwards got the disputed suit and the other goods giving rise to billing errors before they were paid for. What matters for our purposes is that, assuming that Edwards is not an obligor on the card because he does not claim to be one, the extension of credit was to the Maghamfars, not Edwards. Wells Fargo never "offered" or "extended" credit to Edwards personally. Rather, the Maghamfars let Edwards incur debts on their behalf. In "adding" Edwards, Wells Fargo simply made it possible for him to use credit it extended to the Maghamfars.

Edwards claims to be a "cardholder" to whom an obligation is owed, and the Bank claims that he is not. Plainly, he physically held a card, but that is not the end of the issue. Regulation Z defines "cardholder," so the definition controls. There are two definitions of "cardholder" in the regulations. One definition fits Edwards, "a natural person to whom a credit card is issued for consumer credit purposes[.]"[18] The second definition applies to the Maghamfars, not Edwards. The second definition says that a "cardholder" includes "a natural person who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person."[19] Wells Fargo's argument that Edwards is not a "cardholder" because he does not fit one of

---

[17] 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.")

[18] 12 C.F.R. § 226.2(a)(8).

[19] 12 C.F.R. § 226.2(a)(8).

the two definitions is mistaken, since Edwards fits squarely into the first, and the definitions are stated in the alternative, separated by "or," not "and." Wells Fargo says that the Official Staff Interpretation of that regulation "clears this up" and shows decisively that Edwards is not a "cardholder" because it excludes one who "is merely the authorized user of a card issued to another."[20] That phrase does indeed exclude Edwards, but it only applies to the second alternative, not the first. Thus Wells Fargo's argument that Edwards is not a "cardholder" is simply incorrect. But it is also beside the point.

[4] Regulation Z makes the target credit card issuer's duty to resolve billing disputes less rather than more clear. Rather than describing the issuer's duties to the "obligor," as the statute does, it describes them as to the "consumer."[21] The billing dispute resolution process is triggered, under Regulation Z, by written notice from "a consumer,"[22] not the "obligor." The creditor has to send to the "consumer" written acknowledgment of receiving that notice.[23] Edwards argues that he is the consumer, so Wells Fargo should have resolved the disputes with him. This argument is plausible, because in ordinary speech the "consumer" would be the person who bought things, and Edwards would know first hand about the issues regarding his grey suit or his visit to Kinko's, and the obli-

---

[20]12 C.F.R. § 226 Supp. I at 371 (Official Staff Interpretations) ("A cardholder is a natural person at whose request a card is issued for consumer credit purposes or who is a co-obligor or guarantor for such a card issued to another. The second category does not include an employee who is a co-obligor or guarantor on a card issued to the employer for business purposes, nor does it include a person who is merely the authorized user of a card issued to another.").

[21]12 C.F.R. pt. 226, supp I. § 226.13(1), et seq.

[22]12 C.F.R. § 226.13(b) ("A billing error notice is a written notice from a consumer . . . .").

[23]12 C.F.R. § 226.13(c)(1) ("The creditor shall mail or deliver written acknowledgment to the consumer within 30 days of receiving a billing error notice . . . .").

gors, the Maghamfars, would not. Neither Regulation Z nor the Official Staff Interpretation offer any explanation of why they departed from the statutory term, "obligor," and "substituted the term "consumer" to delineate the billing dispute resolution obligation.

**[5]** It is hard to say whether Edwards is a "consumer" as defined by the regulation, "a cardholder or natural person to whom consumer credit is offered or extended."[24] He is a natural person and a cardholder, but since he is not the obligor on the credit card, it is hard to say whether he is the person "to whom consumer credit is offered or extended." The statute defines "credit" as "the right . . . to defer payment of debt or to incur debt and defer its payment."[25] The Maghamfars are the obligors with the right to defer payment of debt, but Edwards is the person with the credit card, it is Edwards who appears to be the person who can incur debt, as he did when he bought the grey suit. And Edwards had the right to defer payment to the merchant until Wells Fargo sent the merchant payment, but the Maghamfars and not Edwards had the right to defer payment to Wells Fargo.

Whether Regulation Z and the Official Staff Commentary impose on Wells Fargo a duty to communicate with the consumer, or even if Edwards is the consumer for this purpose, is not ascertainable with certainty. Neither provision says in so many words with whom the credit card issuer is supposed to resolve billing disputes. The Official Staff Interpretation says that "[d]isclosures may be made to either obligor on a joint account" and are "not satisfied by giving disclosure only

---

[24]12 C.F.R. § 226.2(a)(11); *see also* 15 U.S.C. § 1602(h) ("The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.").

[25]15 U.S.C. § 1602(e).

to a surety or guarantor for a principal obligor or to an authorized user[,]" but "[i]n rescindable transactions . . . separate disclosures must be given to each consumer who has the right to rescind under § 226.15."[26] The section referred to, § 226.15, relates to mortgages and deeds of trust on principal dwellings,[27] not purchases of goods where the consumer has a right to return them to the store, so the regulation combined with the staff interpretation means that the issuer cannot satisfy its disclosure responsibility by disclosing to the authorized user, and must disclose to an obligor. But that is not the same thing as saying that the issuer need not disclose to the authorized user as well.

[6] Without much confidence, we conclude that even though Edwards is a "consumer" in the ordinary sense of the word, and even though it would make sense for Wells Fargo to discuss his grey suit problems with him and no practical sense to discuss it with the Maghamfars who did not buy the suit and would not likely know much about it, he is not a "consumer" in the bizarre usage of Regulation Z. He obtained credit from the merchant who sold him the grey suit, perhaps, but it seems more straightforward to treat the Maghamfars, who owe the money, as obtaining credit from Wells Fargo. Regulation Z says, in the course of setting out the credit card issuer's duties to the "consumer," that the "consumer" may withhold disputed amounts on the credit card and prohibits collection efforts against the "consumer."[28] Assuming that Edwards is not an obligor on the card, there could not be any question of his withholding payment, nor could there be any collection efforts against him, so the Regulation Z procedures would make no sense if he were the "consumer" Regulation Z is talking about. Also, the Regulation Z version of the credit card issuer's duties to the "consumer" expressly addresses "billing error resolution" and defines "billing error" as an

---

[26]12 C.F.R. pt. 226, supp. I § 226.6 at 391.

[27]12 C.F.R. § 226.15.

[28]12 C.F.R. § 226.13(d).

error of various kinds on the "periodic statement" and failure to mail the "periodic statement" to the "consumer's last known address."[29] Periodic statements are sent to the obligor on the credit card, not additional cardholders who are not obligors. Additional cardholders who are not obligors do not have any duty to the issuer to pay the bill. These references therefore make no sense if by "consumer" Regulation Z means consumer in the ordinary sense of the word.

[7] Finally, it would be quite a big step if the Federal Reserve Board converted a statutory obligation owed only to an "obligor" under the statutory language[30] into one owed to every college student using a credit card issued to a parent, when the child had a dispute with a pizza parlor. It might make some sense, since the college student and not the parent would know the details of the pizza transaction, or it might not because resolving disputes would require more time and personnel, but Congress did not say that the billing error resolution duty runs to all authorized cardholders. It designated only obligors. The parents, not the bank, have the burden of discussing the pizza parlor dispute with their child. Although we remain mystified about why Regulation Z does not use the same word as the statute, "obligor," and why it uses "consumer" to mean something that excludes many consumers who would know about the disputed transactions when the obligors do not, that is what it does.

AFFIRMED.

---

[29]12 C.F.R. § 226.13(a) (defining "billing error" as in error reflected on the "periodic statement" or the "creditor's failure to mail or deliver a periodic statement to the consumer's last known address").

[30]15 U.S.C. § 1666(a).