183 N.J. Super. 285 (1982)
443 A.2d 1082
SINGER SUPERMARKETS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF HILLSDALE, NEW JERSEY, DEFENDANT-APPELLANT, AND ALFRED J. MURPHY, MAYOR; COUNCIL OF THE BOROUGH OF HILLSDALE; WILLIAM J. ECKARDT, PRESIDENT, CATHERINE CICORIA, CHARLES McAULIFFE, EDWARD F. STUCKEY, JOHN E. KELLEY AND RICHARD ROSANO, MEMBERS OF THE COUNCIL OF THE BOROUGH OF HILLSDALE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1982.
Decided January 20, 1982.
*286 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Timothy J. Sullivan argued the cause for appellant (Robert C. Selser, attorney).
Benjamin H. Chodash argued the cause for respondent (Krieger & Chodash, attorneys; Salvatore A. Brancato, on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant Zoning Board of Adjustment of the Borough of Hillsdale (board) appeals from a judgment of the Law Division in favor of plaintiff Singer Supermarkets, Inc., reversing the board's denial of plaintiff's application for a variance to erect ten signs on the front facade of its building and directing that the appropriate municipal official of the Borough of Hillsdale issue the necessary permit to plaintiff to permit it to erect and maintain the requested signs.
Plaintiff leased a building located at 372 Broadway, Hillsdale, New Jersey, in which it operated a "Shop Rite" supermarket. The building was located in a commercial zone, and plaintiff sought a variance to erect and maintain ten signs on the front facade of the building for the purpose of displaying advertisements.
The board, following a hearing, found that the granting of the variance would result in a substantial departure from and *287 substantially impair the terms, purposes and intent of the Hillsdale's Land Use Ordinance, and that plaintiff failed to show sufficient and compelling reasons why the variance should be granted and therefore denied the requested variance. In reaching this result the board, in part, made the following findings of fact and conclusions:
That if the requested variance relief were approved, the 10 additional signs permitted on the front facade of the building on the subject premises would present a potential safety hazard, since drivers passing along Broadway, the public street which abuts the premises, or driving within the parking area of the premises, could be distracted thereby.
That of all other commercial establishments in the borough, there was no evidence submitted to the Board of any such establishment where there were as many as 10 signs on the front facade thereof, as proposed by the applicant for the subject premises; and that, if the Board were to permit such a significant departure from the terms of the Land Use Ordinance, it would create a bad precedent for future applications of this kind.
Plaintiff thereupon instituted this action contending, generally, that (1) the denial of the variance by defendant was arbitrary, capricious and unreasonable, and (2) the provisions of the Hillsdale Land Use Ordinance which regulate business signs are unconstitutional on their face and as applied to the premises leased by plaintiff. The trial court, at the conclusions of the hearing, did not decide the question of the arbitrariness of the denial of the variance. Rather, it held that the challenged provisions of the ordinance were unconstitutional as applied to plaintiff. This appeal followed.
Section 1.003 of the Hillsdale Land Use Ordinance defines a "sign" as "[a]ny device (whether or not permanent, mobile or portable), structure, or object that provides visual communication to others...." Section 4.410 of that ordinance ("Signs Permitted in the Commercial District Only"), provides in part:
a) One sign which relates to the business being conducted on the premises and which does not exceed an area equal to ten percent of the front facade may be placed or inscribed upon the front facade of the building. The sign may be illuminated but shall not be of the flashing type and shall not project more than twelve inches in front of the facade or extend more than three feet above the top or extend beyond the setback lines of the building....
*288 The building in which plaintiff operates its supermarket has windows on the front, but that portion is occupied by plaintiff's tenant, leaving plaintiff without any windows in which to display its advertising posters. Those posters supplement newspaper advertising. Plaintiff relies upon its posters, frequently changing them to match bargains offered at competing stores. Plaintiff attached ten metal frames to the brick facade on the front of the building. These frames were five feet high and two feet wide and projected a few inches from the wall. They were covered with plexiglass and were designed to hold the same kind of signs or posters which are ordinarily hung in supermarket windows.
The board denied the variance, requested after the frames were installed, primarily on the ground that the posters constituted a traffic hazard not only to traffic passing the supermarket but also to traffic in the supermarket parking lot. The trial court, relying upon State v. Miller, 83 N.J. 402 (1980), held that the ordinance as applied here constituted an improper infringement upon plaintiff's First Amendment rights. We disagree.
At the outset, we point out that State v. Miller, supra, is clearly distinguishable and does not require affirmance of the judgment below. There, our Supreme Court was dealing with an ordinance which constituted an absolute ban on political speech. Here, we are dealing with an ordinance which simply limits advertising  commercial speech. While commercial speech is protected from unwarranted government regulation, it is generally recognized that such speech is entitled to a lesser degree of protection than other constitutionally guaranteed forms of expression. The standards governing the regulation of commercial speech were set out with clarity by the United States Supreme Court in Central Hudson Gas v. Public Service Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). There the court observed:
The Commission's order restricts only commercial speech, that is, expression related solely to the economic interests of the speaker and its audience. Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748, 762, 96 *289 S.Ct. 1817, [1825] 48 L.Ed.2d 346 (1976); Bates v. State Bar of Arizona, 433 U.S. 350, 363-364, 97 S.Ct. 2691, [2698-99] 53 L.Ed.2d 810, 51 Ohio Misc. 1, 5 Ohio Ops 3d 60 (1977); Friedman v. Rogers, 440 U.S. 1, 11, 99 S.Ct. 887, [895] 59 L.Ed.2d 100 (1979). The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. Virginia Pharmacy Board, 425 U.S. at 761-762, 96 S.Ct. 1817, [1825] 48 L.Ed.2d 346. Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information. In applying the First Amendment to this area, we have rejected the "highly paternalistic" view that government has complete power to suppress or regulate commercial speech. "[P]eople will perceive their own best interests if only they are well enough informed, and ... the best means to that end is to open the channels of communication, rather than to close them...." Id. at 770, 96 S.Ct. 1817, [1829] 48 L.Ed.2d 346; see Linmark Associates, Inc. v. Willingboro, 431 U.S. 85, 92, 97 S.Ct. 1614, [1618] 52 L.Ed.2d 155 (1977). Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all. Bates v. State Bar of Arizona, supra, [433 U.S.] at 374, 97 S.Ct. 2691, [2704] 53 L.Ed.2d 810, 51 Ohio Misc. 1, 5 Ohio Ops 3d 60.
Nevertheless, our decisions have recognized "the `commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation and other varieties of speech." Ohralik v. Ohio State Bar Assn., 436 U.S. 447, 455-456, 98 S.Ct. 1912, [1918] 56 L.Ed.2d 444 (1978); see Bates v. State Bar of Arizona, supra, [433 U.S.] at 381, 97 S.Ct. 2691, [2707] 53 L.Ed.2d 810, 51 Ohio Misc. 1, 5 Ohio Ops.3d 60; see also Jackson & Jeffries, Commercial Speech: Economic Due Process and the First Amendment, 65 Va.L.Rev. 1, 38-39 (1979). The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. 436 U.S. at 456, 457, 98 S.Ct. 1912, [1918, 1919] 56 L.Ed.2d 444. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation.
The First Amendment's concern for commercial speech is based on the informational function of advertising. See First National Bank of Boston v. Bellotti, 435 U.S. 765, 783, 98 S.Ct. 1407, [1419] 55 L.Ed.2d 707 (1978). Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it, Friedman v. Rogers, supra, [440 U.S.] at 13, 15-16, 99 S.Ct. 887, [896, 897] 59 L.Ed.2d 100; Ohralik v. Ohio State Bar Assn., supra, [436 U.S.] at 464-465, 98 S.Ct. 1912, [1923-25] 56 L.Ed.2d 444, or commercial speech related to illegal activity, Pittsburg Press Co. v. Human Relations Comm'n, 413 U.S. 376, 388, 93 S.Ct. 2553, [2560] 37 L.Ed.2d 669 (1973).
If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, *290 the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the State interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.
[447 U.S. at 561-564, 100 S.Ct. at 2349-2350, 65 L.Ed.2d at 348-350].
In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. [447 U.S. at 566, 100 S.Ct. at 2351, 65 L.Ed.2d at 351]
See, also, Metromedia, Inc. v. San Diego, 453 U.S. 490, 506-509, 101 S.Ct. 2882, 2892-93, 69 L.Ed.2d 800, 814-815 (1981).
Applying the foregoing analysis here, we hold that the restrictions on commercial speech imposed by the Hillsdale Land Use Ordinance are valid. At the outset it appears that there is no suggestion that the commercial advertising proposed here involves unlawful activity or is misleading, and therefore we must look to the other criteria to determine the validity of the restrictions imposed. First, there can be no real doubt that the twin goals that the Hillsdale Land Use Ordinance obviously seeks to further  traffic safety and the appearance of the municipality  are substantial governmental goals. In this regard, it is firmly settled that traffic safety and aesthetics are the proper objectives of regulation by a municipality through zoning. Second, the provisions of the ordinance here under review directly advance these governmental goals. And thirdly, we are satisfied that the ordinance reaches no farther than necessary to accomplish the objectives of traffic safety and the appearance of the city.
Accordingly, we reverse the judgment of the trial court declaring the provisions of the Hillsdale Land Use Ordinance which regulated business signs unconstitutional as applied to *291 plaintiff and the premises occupied by it for supermarket purposes and remand the matter to the trial court for a determination as to whether the board acted arbitrarily, capriciously or unreasonably in denying the requested variance. We do not retain jurisdiction.