United States Court of Appeals,

Eleventh Circuit.

No. 95-9525.

SOUTHLAKE PROPERTY ASSOCIATES, LTD., a Georgia Limited Partnership, Plaintiff-Appellant,

v.

CITY OF MORROW, GEORGIA, a Political Subdivision of the State of Georgia, Defendant-Appellee,

Joyce Bean, Defendant.

May 15, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-cv-3379-ODE), Orinda D. Evans, Judge.

Before BARKETT, Circuit Judge, and DYER and HILL, Senior Circuit Judges.

HILL, Senior Circuit Judge:

Southlake Property Associates, Ltd. brought this action to enjoin enforcement of the City of Morrow's sign ordinance, arguing that the ordinance, on its face, violates the First and Fourteenth Amendments to the United States Constitution as well as similar provisions of the State of Georgia Constitution. On cross motions for summary judgment, the district court found no violation of either constitution, and denied injunctive relief. For the following reasons, we affirm.

## I. Background

Southlake Property Associates, Ltd. (Southlake) is a Georgia limited partnership which owns unimproved real property adjacent to Interstate Highway 75 and State Route 401 in Morrow, Georgia. In August 1994, Southlake desired to erect four offsite outdoor advertising billboards on its property, primarily to communicate

commercial messages to travelers on I-75.  To do so, Southlake was required to obtain certification from the City of Morrow (Morrow) stating that the signage is consistent with local law.  Southlake applied for this certification;  Morrow denied it.

Morrow's sign ordinance prohibits billboards.[1]  Section 8-5-1(4) of the ordinance defines a billboard as an:

> [a]dvertising sign or a sign which advertises a commodity, product, service, activity or any other person, place or thing, which is not located, found, or sold on the premises upon which such sign is located;  usually found along or near major roadways and of such size as to catch the attention of the motoring public and may sometimes be illuminated or animated.

"Advertising sign" is defined in § 8-5-1(1) as

> any letter, figure, character [etc.] ... which shall be so constructed, placed, attached [etc.] ... so that the same shall be used for the attraction of the public to any place, subject, person, firm, corporation, public performance, article, machine or merchandise whatsoever ... so as to draw the attention of passerby [sic] ...

Southlake alleges that, on its face, the ordinance violates the First and Fourteenth Amendments in several different ways:  (1) it contains no statement of the governmental interests it seeks to advance;  (2) it favors commercial over noncommercial, *i.e.,* political or ideological speech;  (3) it prohibits *all* offsite noncommercial signs in Morrow;  (4) it bans all permanent signs placed in residential districts;  and (5) it allows content-based

---

[1]The City of Morrow Code of Ordinances, § 8-5-3, states in part:

> Except as otherwise provided by this chapter, the following types of signs are prohibited:
>
> ...
>
> (4) Billboard signs.

exemptions.  The district court granted summary judgment to Morrow on each of these claims;  Southlake reasserts all five issues on appeal.

Southlake's claims fall into two categories:  (1) that the ordinance impermissibly regulates *commercial* speech;  and (2) that the ordinance unconstitutionally burdens *noncommercial* speech.

## II. Discussion

A. *Commercial Speech*

Prior to 1976, purely commercial advertisements of goods or services were thought to be outside the protection of the First Amendment. *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942).  In 1976, however, the Supreme Court held that no state may completely suppress the dissemination of truthful information about an entirely lawful activity merely because it is fearful of that information's effect upon its recipients. *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

The Court has continued to observe, however, a distinction between commercial and noncommercial speech, holding that the former may be regulated in situations where the latter may not be. *Bates v. State Bar of Arizona,* 433 U.S. 350, 379–81, 383–84, 97 S.Ct. 2691, 2706–08, 2708–09, 53 L.Ed.2d 810 (1977);  *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 98 S.Ct. 1912, 1918–19, 56 L.Ed.2d 444 (1978);  *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 69 n. 32, 96 S.Ct. 2440, 2452 n. 32, 49 L.Ed.2d 310 (1976).

Finally, in *Central Hudson Gas & Electric Corp. v. Public*

*Service Comm'n of New York,* 447 U.S. 557, 562-63, 100 S.Ct. 2343, 2349-50, 65 L.Ed.2d 341 (1980), the Court held: "[t]he Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation."[2] The Court adopted a four-part test for evaluating the constitutionality of governmental regulation of commercial speech as distinguished from more fully protected speech. (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Id.* at 563-66, 100 S.Ct. at 2350-51.

Southlake asserts that Morrow's ordinance fails the second prong of this test by failing to articulate a significant governmental interest. Southlake argues in its brief that Morrow's ordinance contains "no indication of the governmental interests it seeks to advance."[3] At oral argument, however, Southlake admitted that the ordinance does contain a "Statement of Findings" reciting

---

[2]*But see City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 427-31, 113 S.Ct. 1505, 1515-18, 123 L.Ed.2d 99 (1993) (ordinance banning newsracks carrying commercial advertisements but permitting those carrying newspapers unconstitutional).

[3]If this were so, the ordinance might well fail to meet this prong of the *Central Hudson* test. *See Dills v. City of Marietta,* 674 F.2d 1377, 1381 (11th Cir.1982).

Morrow's significant interest in maintaining the "rights of the public to clean, aesthetically pleasing and safe business thoroughfares." These purposes have been recognized as significant governmental interests which support restrictions on the time, place, and manner of the display of commercial signs. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507-08, 101 S.Ct. 2882, 2892-93, 69 L.Ed.2d 800 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals. It is far too late to contend otherwise....").

Southlake's contention at oral argument that this statement of purpose was added to the ordinance *after* it applied for billboard permits is not supported by the record.[4] Therefore, insofar as Morrow's ordinance regulates commercial speech, it meets the constitutional requirements of *Central Hudson.*[5]

B. *Noncommercial speech*

It does not necessarily follow, however, that Morrow's prohibition on billboards places no impermissible burden on noncommercial speech. To the extent that the ordinance regulates noncommercial speech, it must withstand a heightened level of scrutiny. *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. at 456, 98 S.Ct. at 1918-19. Noncommercial speech is fully protected by the First Amendment and Morrow's ordinance must be evaluated by this

---

[4]We take this opportunity to reiterate that disputes such as this over a readily ascertainable record fact have no place in the briefs or at oral argument.

[5]Southlake does not raise on appeal any challenge to the ordinance based on the other three *Central Hudson* factors.

exacting standard. *Id.*

Morrow's ordinance on its face prohibits billboards, defined as any "sign which advertises a commodity, product, service, activity or any other person, place, or thing, which is not located, found or sold on the premises upon which such sign is located." As the ordinance makes no distinction between commercial and noncommercial messages, the district court held that both commercial and noncommercial speech are included within its definition of billboard. If so, the ordinance prohibits all offsite signs bearing noncommercial messages in Morrow.[6]

---

[6]The district court relied on *Messer v. City of Douglasville,* 975 F.2d 1505 (11th Cir.1992), *cert. denied,* 508 U.S. 930, 113 S.Ct. 2395, 124 L.Ed.2d 296 (1993), to hold this prohibition of offsite, noncommercial signage constitutionally permissible. In *Messer,* however, the prohibition on billboards was limited to the historic district of Douglasville, in which the city had a substantial aesthetic interest. In finding the ordinance sufficiently narrowly drawn, we specifically reserved the question of whether a government's interest in traffic safety and aesthetics are an acceptable justification for a city-wide ban on all offsite noncommercial signs. We held:

> The ordinance does not apply to the entire city of Douglasville. Off-premise noncommercial signs are allowed in the parts of the city not designated as a historic district. Because a blanket ban on off-premise signs is limited to the historic district of Douglasville, we do not need to decide if a government's interests in traffic safety and aesthetics are an acceptable justification for a city-wide ban of off-premise noncommercial signs. We simply decide that the government's interests in the aesthetics of a designated historic district are sufficiently significant to override the First Amendment rights of a property owner to off-premise noncommercial signs.

975 F.2d at 1511.

We have since reiterated that restricting the prohibition of offsite signs to a limited area of the city was a factor in our decision. *See Dimmitt v. City of Clearwater,* 985 F.2d 1565, 1569 n. 4 (11th Cir.1993) (city's aesthetic interests in preserving *historic district*

Morrow denies, however, that its ordinance prohibits offsite signs bearing noncommercial messages. Morrow maintains:

> The City has never interpreted its Ordinance to disallow noncommercial speech. Further, the City's [sic] has documented a three-year history of permitting noncommercial off-premise messages to be posted on commercial properties throughout the City. These provisions demonstrate a long-standing pattern and practice of the City to allow free expression of noncommercial speech. Further, ... the City has *never* denied a sign permit for noncommercial speech.

> .   .   .   .   .

> While billboard is defined by the City Ordinance very broadly, that broad interpretation has been narrowed by the City practice of allowing noncommercial messages off premises over an extended period of time. The City has therefore narrowed its interpretation of billboard to refer to the billboard industry as it exists in commercial practice.

Morrow's contention here is that the ordinance *as applied* permits offsite noncommercial messages. The challenge to this ordinance, however, is on its face. Although the city's interpretation and enforcement of the ordinance are relevant to our inquiry, they are not determinative. *See Dimmitt v. City of Clearwater,* 985 F.2d 1565, 1572 (11th Cir.1993). If the ordinance, by its own terms, unconstitutionally burdens protected speech, it cannot be saved by an application inconsistent with those terms. *See American Booksellers v. Webb,* 919 F.2d 1493, 1500 (11th Cir.1990), *cert. denied,* 500 U.S. 942, 111 S.Ct. 2237, 114 L.Ed.2d 479 (1991).

Our task then is to determine whether the ordinance *on its face* prohibits offsite noncommercial advertising signs, as

---

supported content neutral restriction upon offsite commercial and noncommercial signs) (emphasis added).

Southlake contends.[7]  We conclude that it does not.

The ordinance permits onsite, but prohibits *offsite* advertising signs.  This onsite-offsite distinction is reasonably clear and straightforward in the commercial speech context.  The site of a commercial activity can usually be recognized without difficulty.  Whether a sign bearing a commercial message is offsite, therefore, is readily ascertainable.  Such signs are prohibited.  This the Constitution allows. *Metromedia,* 453 U.S. at 512, 101 S.Ct. at 2894-95.  *See also Messer v. City of Douglasville,* 975 F.2d 1505, 1508 (11th Cir.1992).

Locating the site of noncommercial speech, however, is fraught with ambiguity.  The ordinance prohibits signs which seek to attract attention to any person, place, subject, or thing  *not* located on the premises where the person, place, subject, or thing is found.  Noncommercial speech usually expresses an idea, an aim, an aspiration, a purpose, or a viewpoint.  Where is such an idea located?  What is the site upon which the aspiration is found?

In interpreting similar ordinances, many courts have assumed that the address of identifiable groups or associations formed around an idea, aim, philosophy or viewpoint defines the location of the idea.  For example, the First Circuit has recently observed, "[t]he only signs containing noncommercial messages that are [onsite] are those relating to the premises on which they stand, which inevitably will mean signs identifying nonprofit institutions." *Ackerley Comm., Inc. v. City of Cambridge,* 88 F.3d

---

[7]If so, we must then determine whether this prohibition is allowed by the First Amendment.

33, 37 (1st Cir.1996). Thus, speech advocating racial bigotry is onsite at a Klavern of the Klan; "Save the Whales" is onsite where Greenpeace has an office; and "Jesus Saves" is displayed onsite only where a Christian religious organization is operating.

Under this view, the site of noncommercial speech, like commercial speech, is wherever some organized activity associated with the idea espoused is located or found. The expression of an idea anywhere other than at the site of an activity dedicated to that idea is "offsite." If an ordinance prohibits offsite signs, all noncommercial messages located on signs, other than those located at the site of the activity they espouse, are banned.[8]

---

[8]While there is no claim in this case that the ordinance permits bias, censorship, or preference regarding a speaker's point of view, and no "hint of bias," *Members of City Council v. Taxpayers For Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984) in this prohibition of all offsite messages, there is a *selection* of certain messages. *Metromedia* teaches that we may selectively allow certain kinds of *commercial* speech, but we may not do the same in the *noncommercial* speech arena. 453 U.S. at 514, 101 S.Ct. at 2896. Many courts, therefore, which view the site of noncommercial speech, like commercial speech, to be wherever some organized activity associated with the idea espoused is located, have invalidated ordinances prohibiting all offsite signs. *See, e.g., Ackerley,* 88 F.3d at 37 (ordinance unconstitutionally favored commercial speech by disallowing offsite noncommercial speech); *National Advertising Co. v. City of Orange,* 861 F.2d 246, 247-49 (9th Cir.1988) (city sign ordinance unconstitutionally prohibited offsite noncommercial signs based on their content); *Jackson v. City Council,* 659 F.Supp. 470 (W.D.Va.1987) (invalidating ordinance because it virtually prohibited noncommercial advertising but permitted onsite commercial advertising), *aff'd in part, vacated in part,* 840 F.2d 10 (4th Cir.1988). *Cf. National Advertising Co. v. City of Denver,* 912 F.2d 405, 409 (10th Cir.1990) (ordinance constitutional because prohibition of offsite signs limited to commercial speech); *Metromedia, Inc. v. Mayor and City Council of Baltimore,* 538 F.Supp. 1183 (D.Md.1982) (ordinance facially invalid since prohibited owner of commercial property from displaying ideas of others).

Some municipalities have read *Metromedia* to prohibit the banning of offsite noncommercial messages and have

There is, however, no logical reason to interpret the ordinance as locating the expression of ideas, aspirations, and beliefs in this way. An idea, unlike a product, may be viewed as located wherever the idea is expressed, *i.e.,* wherever the speaker is located.[9] Under this alternative view, all noncommercial speech is onsite. A sign bearing a noncommercial message is onsite wherever the speaker places it.

Although Morrow's definition of billboard does not explicitly exclude noncommercial speech, it defines billboard as a sign containing an offsite message. Under the alternative view of the onsite-offsite distinction, a "billboard" would not include a sign carrying a noncommercial message.[10] Offsite noncommercial signs,

---

specifically limited their prohibition of billboards to those displaying commercial messages. These ordinances have been upheld. *National Advertising Co. v. City of Denver,* 912 F.2d 405, 409 (10th Cir.1990) (the preference for noncommercial over commercial advertising under the new ordinance is the kind of underinclusiveness the First Amendment tolerates); *Major Media, Inc. v. City of Raleigh,* 792 F.2d 1269, 1272 (4th Cir.1986) (sign ordinance expressly excludes noncommercial messages from its prohibitions); *Lamar-Orlando Outdoor Advertising v. City of Ormond Beach,* 415 So.2d 1312 (Fla. 5th DCA 1982) (ordinance reaches only commercial speech); *R.O. Givens, Inc. v. Town of Nags Head,* 58 N.C.App. 697, 294 S.E.2d 388 (1982) (ordinance restricts commercial speech only); *Singer Supermarkets v. Zoning Bd. of Adjustment,* 183 N.J.Super. 285, 443 A.2d 1082, 1084 (App.Div.1982) (ordinance does not reach noncommercial speech).

[9]The Supreme Court's holding in *City of Ladue v. Gilleo,* 512 U.S. 43, 56, 114 S.Ct. 2038, 2046, 129 L.Ed.2d 36 (1994), recognizes the significance of locating an idea at the site of the speaker: "Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the "speaker.' "

[10]Indeed, under this view, any ordinance which prohibits billboards, defined as offsite signs, would not limit

therefore, would not be prohibited.  This result is consistent with Morrow's enforcement of its ordinance.

Which view of Morrow's ordinance is correct?  As Morrow itself concedes, the ordinance's definition of billboard is ambiguous.  In evaluating this facial challenge to the ordinance, we must construe the ambiguity, if possible, in a manner which avoids any constitutional problems.  *American Booksellers,* 919 F.2d at 1500.  *See also EEOC v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 285 (5th Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982).  In so doing, we must consider Morrow's own authoritative construction of the ordinance, including its implementation and interpretation.  *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 131, 112 S.Ct. 2395, 2401-02, 120 L.Ed.2d 101 (1992).  We must defer to the City's statutory interpretation so long as its interpretation is based on a permissible construction of the ordinance.  *Satellite Broadcasting and Comm. Ass'n v. Oman,* 17 F.3d 344, 347 (11th Cir.1994).

Morrow interprets its ordinance to provide no restraint upon noncommercial speech.[11]  We agree.  The definition of billboard as

_____

noncommercial messages anywhere.  This does not necessarily mean, however, that all noncommercial signs must be permitted everywhere.  *See City of Ladue,* 512 U.S. at 58 n. 17, 114 S.Ct. at 2047 n. 17 ("Nor do we hold that every kind of sign must be permitted in residential areas.  Different considerations might well apply, for example, in the case of signs [whether political or otherwise] displayed by residents for a fee....")  What those different considerations might be must await a case presenting the issue of signs for a fee and signs *pro bono.*

[11]Of course, should Morrow reinterpret its ordinance to prohibit noncommercial signage, this would present a different case.

an offsite advertising sign does not include noncommercial speech as such speech is always onsite.

## III. Conclusion

Morrow's sign ordinance states that it seeks to promote the twin goals of aesthetics and traffic safety.  To accomplish these goals it prohibits billboards, defined as offsite advertising signs.  This prohibition does not impermissibly restrict commercial speech.  The ordinance does not reach noncommercial speech.  The ordinance does not offend the Constitution.  Accordingly, the summary judgment of the district court is AFFIRMED.