**GRANITE STATE OUTDOOR ADVERTISING, INC.,**
Plaintiff,

v.

**CITY OF ST. PETE BEACH, FLORIDA; Ward Friszolowski; and Mike Bonfield, Defendants.**

No. 8:02–CV–331–T30MSS.

United States District Court,
M.D. Florida.

Jan. 13, 2004.

Sean R. Smith, Dow, Lohnes & Albertson, PLLC, E. Adam Webb, Webb & Porter, L.L.C., Atlanta, GA, for Plaintiff.

Conal Doyle, Fowler, White, Boggs, Banker, P.A., Tampa, FL, William David Brinton, Cristine M. Russell, Rogers, Towers, P.A., Jacksonville, FL, for Defendants.

## ORDER

MOODY, District Judge.

THIS CAUSE comes before this Court upon:

1. Defendants' Motion for Summary Judgment (Dkt.# 26) and Plaintiff's response (Dkt.# 32) thereto;[1]

2. Plaintiff's Cross Motion for Partial Summary Judgment (Dkt.# 29), Defendants' response (Dkt.# 42), and Plaintiff's reply (Dkt.# 58) thereto; and

3. Defendants' suggestion of mootness (Dkts.# 56, 60) and Plaintiff's response (Dkt.# 59) thereto.

## I. BACKGROUND

This is the third case in a trilogy of First Amendment billboard cases brought in this Court by the Plaintiff, Granite State Outdoor Advertising, Inc. ("Granite State"), against cities in the Tampa Bay area.[2] Granite State is a Georgia corporation that is in the business of acquiring billboard permits and erecting and leasing advertising space on its billboards. In this case, Granite State signed lease agreements authorizing it to construct and operate one trivision[3] billboard sign on five different parcels of real property within

---

1. Granite State concedes that the individual defendants (Friszolowski and Bonfield) are entitled to qualified immunity based on this Court's prior conclusion in *Granite State Outdoor Advertising, Inc. v. City of Clearwater,* 213 F.Supp.2d 1312 (M.D.Fla.2002). *See* Response (Dkt.# 32) at 3. Therefore, this Court grants summary judgment to those defendants.

2. The two previous cases have been ruled on by the Eleventh Circuit. In Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, the Eleventh Circuit affirmed in part and reversed in part this Court's rulings on cross motions for summary judgment. 348 F.3d 1278 (11th Cir.2003) *("Granite State I")*. Similarly in *Granite State Outdoor Advertising, Inc. v. City of Clearwater,* the Eleventh Circuit also affirmed in part and reversed in part this Court's rulings on cross motions for summary judgment and Granite State's motion for injunctive relief and remanded the case back to this Court. 351 F.3d 1112 (11th Cir.2003) *("Granite State II")*.

3. Trivision refers to a series of three sided prisms grouped together that rotate approximately every ten seconds allowing an outdoor

the City of St. Pete Beach (the "City"). The City is a political subdivision of the State of Florida located on the west coast of Florida with beaches on the Gulf of Mexico.

## A. GRANITE STATE'S APPLICATIONS FOR SIGN PERMITS

On February 13, 2002, two Granite State representatives went to the City offices where sign permits are issued. According to Granite State's version of the facts, the representatives presented completed applications with attachments to Lisa Giddens, an Administrative Services Assistant for the City, who receives all submitted sign permit applications. In its applications, Granite State proposed erecting five sixty-five foot tall billboards with signage areas of 378 to 672 square feet. Giddens indicated to Granite State that the City did not allow off-site signs. Granite State requested that Giddens issue a written denial. On February 15, 2002, Giddens sent a letter to Granite State indicating that the City did not allow off-site signs except in two limited circumstances, neither of which applied to Granite State.

According to the City's version of events, two Granite State representatives went to the City offices where sign permits

are issued. The two representatives talked to Giddens about obtaining sign permits, but did not file or submit any applications. During this conversation, Giddens advised them about the off-site sign ban. The two representatives requested her advice in writing, and the letter that Granite State received was her advice in writing about the off-site sign ban.

On February 22, 2002, Granite State filed a twelve count complaint. The City moved to dismiss on the basis of lack of standing, arguing that Granite State never had its applications denied because the applications were never filed or submitted.[4] On March 27, 2002, Granite State reapplied for five sign permits filing identical applications to those presented in February.[5] On June 18, 2002, the City denied the new applications[6] because the proposed signs were off-site signs and, even if the signs were not off-site signs, the signs exceeded height and area limits.[7]

## B. THE SIGN ORDINANCE

The City's then existing sign ordinance (the "sign ordinance") was enacted in November 1998. The purposes in enacting the sign ordinance were the promotion of aesthetics and traffic safety. *See* St. Pete Beach Code §§ 122.2, 122.4(b).[8] Section

---

advertiser to have in effect three billboards at one location.

4. This Court subsequently denied the City's motion without prejudice.

5. Granite State never filed an amended complaint alleging that the denial of the second applications violated its constitutional rights. Even if it had, this Court's analysis would not change. The only additional section of the ordinance that Granite State would have standing to challenge would be the lack of time limits for approving permits. Because this Court concludes that the ordinance in question is content neutral, the lack of time limits does not constitute a constitutional violation or necessitate the invalidation of the

entire ordinance. *See* Granite State I, 348 F.3d at 1282.

6. Granite State never appealed either denial.

7. After conducting discovery, the City now indicates that the proposed signs would also violate its prohibition against animated signs. *See* St. Pete Beach Code § 122.4(e); *also* St. Pete Beach Amended Code § 26.4(d).

8. Section 1.13 contains a severability clause. Section 1.13 states:

The sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the

122.4(h) states that "[o]ff-site signs are prohibited, except as expressly provided in section 122–12 and article III of this chapter." *Id.* § 122.4(h). An off-site sign is further defined as "any sign relating in its subject matter to commodities, accommodations, services or activities on a premises other than premises on which the sign is located." *Id.* § 122.1(16). The St. Pete Beach Code contains two exceptions to the general prohibition against off-site signs: (1) subdivision signs;[9] and (2) off-site signs advertising for a major attraction.[10]

Granite State's proposed signs were to be located on property zoned either C–2 Tourist Residential or C–3 General Commercial. In either a C–2 or C–3 zoned area in the City, freestanding signs can only have a maximum area of one hundred thirty five square feet and a height of thirty five feet. *See* St. Pete Beach Code §§ 122.438(1)(b), (c), 122.468(1)(b), (c). Additionally, Section 122.8 states that all signs must be "designed, constructed, and maintained in accordance with the applicable provisions of the construction codes and city ordinances...."[11] *See id.* § 122.8.

## C. THE AMENDED ORDINANCE

On June 4, 2003, after both parties moved for summary judgment, the City repealed its sign ordinance, enacted a new sign ordinance (the "amended ordinance"), and filed a suggestion of mootness. The amended ordinance accompanied a new land development code and apparently removed many of the sections of the sign ordinance about which Granite State complained. The amended ordinance prohibits and defines an off-site sign exactly the same as under the prior sign ordinance, except it adds a cross reference "See also *Billboard.*" *See* St. Pete Beach (Amended) Code §§ 26.4(a), 26.1 (emphasis in original). The term "Billboard," which was not previously defined, is defined as "a sign structure and/or sign utilized for advertising an establishment, an activity, a product, service or entertainment, which is sold, produced, available or furnished at a place other than on the property on which

---

valid judgment decree of a court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code. St. Pete Beach Code § 1.13

9. Section 122.12 allows for up to two off-site subdivision signs to be placed within the public right-of-way. *See id.* § 122.12. Such signs in most areas seem to be further limited to 24 square feet in area and a maximum height of six feet. *See id.* §§ 122.232, 122.267, 122.302. In no area can such signs exceed 44 square feet in area and a maximum height of twelve feet. *See id.* §§ 122.337, 122.372.

10. Section 122.468(11) allows for a single off-site sign advertising a major attraction in C–3 commercial zones. *See id.* § 122.468(11). Major attraction is not defined within the sign ordinance. The types of off-site signs allowed include ground or wall mounted marquees, projecting or window signs, or roof-mounted signs. *See id.* A major attraction would be covered by Section 122.468(11), which would limit the height and area of the sign. *See id.* § 122.468(11).

The only evidence in the record indicates that since the sign ordinance was enacted in 1998 the City has not issued such a permit and no application had been received to place a "major attraction" off-site sign. Indeed, only one such sign exists in the City and that sign was erected approximately forty years ago before the City had a sign ordinance.

11. Similarly, Section 122.72 allows the City to request from a sign permit applicant information to demonstrate compliance with "all other city laws and ordinances." *Id.* § 122.72. First to the extent that the height limits contained in chapter 122 would not apply, the City's zoning code would bar construction of a sixty five foot sign. *See* St. Pete Beach Code §§ 134.876, 134.984. Second, Granite State presented no evidence that it ever applied for or was in compliance with the applicable building codes.

said sign structure and/or sign is located." *Id.* § 26.1. The amended ordinance does not contain either a major attraction or an off-site subdivision sign exception. Additionally, Section 26.9 of the amended ordinance makes clear that noncommercial messages not related to the business located on a premises are allowed, as long as the size, height, setback, and other dimensional criteria are met. *See id.* § 26.9.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *See id.* Throughout this analysis, the district court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *See id.* at 255, 106 S.Ct. 2505.

## III. DISCUSSION

### A. STANDING

After briefing was completed in this case, the Eleventh Circuit decided Granite State *II*, affirming in part and reversing in part this Court's ruling in a factually similar case. 351 F.3d 1112 (11th Cir.2003). In *Granite State II*, the Eleventh Circuit reversed this Court's conclusion that Granite State had standing to challenge the overbreadth of the City of Clearwater's entire sign ordinance. *See id.* at 1116–17. Instead, the Eleventh Circuit held that Granite State had standing to challenge, as applied or under the overbreadth doctrine, only the section of Clearwater's sign ordinance under which its application was denied.[12] *See id.* at 1117. The court reasoned that the height and area limitation was the only section of the ordinance under which Granite State suffered an injury in fact. *See id.*

■ In this case, Granite State similarly argues that it has standing to challenge the entirety of the City's sign ordinance. This Court concludes that Granite State lacks standing to challenge any section of the City's sign ordinance other than Section 122.4(h) because Granite State has failed to show that it personally suffered actual or threatened injury from any other section of the sign ordinance.[13]

---

12. In that case, Granite State's application was denied under height and area restrictions contained in Clearwater's sign ordinance. *See id.* The Court concluded that regulation constitutional as applied and not overbroad. *See id.*

13. This Court also concludes that Granite State has standing to challenge the two exceptions to the off-site sign prohibition. However, Granite State lacks standing to challenge the City's permitting procedures because, accepting Granite State's version of events as true, the City denied its application on the same day as it applied. Even if Granite State had standing to challenge the lack of time limits in the permitting process, this Court would conclude that the sign ordinance is content neutral and that the lack of time limits is constitutionally acceptable and not a prior restraint. *See Granite State I*, 348 F.3d at 1282–83.

## B. MOOTNESS

This Court next turns to whether Granite State's constitutional challenge to Section 122.4(h) became moot when the City amended its development code and sign ordinance. First, this Court must determine whether any constitutional issue exists under Section 122.4(h). Previously, the Eleventh Circuit concluded that a similar prohibition on the construction of billboards and off-site premises signs was constitutional. *See Southlake Property Assocs., Ltd. v. City of Morrow*, 112 F.3d 1114 (11th Cir.1997).

In Southlake, the City of Morrow's ordinance prohibited billboards and off-site signs. In that case, the ordinance defined a billboard as a "sign which advertises a commodity, product, service, activity or any other person, place, or thing, which is not located, found or sold on the premises upon which such sign is located." *Id.* at 1117. The Eleventh Circuit concluded that such a ban met the Central Hudson test and did not impermissibly burden commercial speech. *See id.* The court also concluded that such a ban did not regulate noncommercial speech because noncommercial speech always occurs at the site where it is expressed. *See id.* at 1118–19. In reaching this conclusion, the Eleventh Circuit found that the ordinance in question was ambiguous as to whether it applied to noncommercial speech and interpreted the ordinance to avoid the constitutional problem of preferring commercial over noncommercial speech. *See id.* at 1119.

In this case, the definition of off-site sign is identical to that contained in Southlake. However, the prohibition against off-site signs in this case contains two exceptions that were not present in Southlake. One of those exceptions, the subdivision sign exception, seemingly implies that the off-site sign prohibition in this case includes a prohibition on at least some noncommercial speech, which would run afoul of the Supreme Court's holding in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).[14] Because this Court concludes that a constitutional issue is raised by Section 122.4(h), this Court must determine if that issue became moot when the City repealed its sign ordinance and enacted an amended ordinance that does not contain such an exception.

A case becomes moot when a superseding event after the commencement of a case removes a challenged feature of a statute or ordinance so that a court can no longer give meaningful relief. *See Naturist Society, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir.1992). However, the Eleventh Circuit has repeatedly held that voluntary cessation of a challenged practice alone does not render a case moot. *See Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*, 162 F.3d 627, 629 (11th Cir.1998); *National Advertising Co. v. City of Fort Lauderdale*, 934 F.2d 283, 286 (11th Cir.1991). Instead, the Eleventh Circuit has held that a challenge becomes moot when the challenged policy was repealed by the governmental authority and there was no reasonable expectation that the governmental authority would return to the prior policy. *See Jews for Jesus*, 162 F.3d at 629 (involving a First Amendment challenge). In Jews for Jesus, the Eleventh Circuit relied on a district court's findings that the change in policy was the result of "substantial deliberation" and had been "consistently applied" for three years to hold that a return to the prior policy was remote. *Id.*

---

14. Other provisions in the sign ordinance suggest an intent by the City to noncommercial speech within Section 122.4(h)'s prohibition. This Court does not resolve whether Section 122.4(h) was facially unconstitutional.

In this case, this Court concludes that Granite State's facial challenge to Section 122.4(h) is moot.[15] First, it is undisputed that the City enacted the amended ordinance around the same time as it enacted a new comprehensive land development code. The new land development code necessitated, at least in part, the adoption of the amended ordinance. Second, the amended ordinance and the land development code appear to be the product of substantial deliberation. The record contains two rather lengthy ordinances and also indicates that multiple public hearings were held before either was passed. Additionally, the amended ordinance resolves any constitutional issue that existed under Section 122.4(h). Finally, there is no evidence and no reason to think that the City will change its policy at the conclusion of this case.

## C. SEVERANCE

█ Even if this Court were to reach the constitutionality issue and hold Section 122.4(h) unconstitutional, this Court would conclude that Section 122.4(h) is severable because the intent of City's sign ordinance is preserved and speech is not more restricted after severance. After severing Section 122.4(h), Granite State still would not be entitled to a sign permit for its proposed billboards because the billboards violate the City's height and area restrictions and such restrictions are constitutional. *See Granite State II*, 351 F.3d at 1117.

█ Severability of a local ordinance is a question of state law. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Under Florida law,

the test for severability is as follows: "[w]hen a part of a statute is declared unconstitutional, the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and bad features are not so inseparable in substance that it can be said that the legislature would have passed the one without the other, and (4) an act complete in itself remains after the invalid provisions are stricken." *Waldrup v. Dugger*, 562 So.2d 687, 693 (Fla.1990) The Florida Supreme Court in another recent severability opinion simply explained that: "[t]he severability of a statutory provision is determined by its relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent." *Ray v. Mortham*, 742 So.2d 1276, 1280 (Fla.1999) (citations omitted). The burden of proving that a provision of an ordinance is not severable lies on the party challenging an ordinance. *See id.* at 1281.

In this case, Section 122.4(h) is severable from the remaining portions of the prior sign ordinance. First, Section 122.4(h) contains a prohibition against one type of signs, off-site signs, that can be separated from the rest of the sign ordinance. Second, the purpose of the entire sign ordinance can be accomplished independently of the off-site sign prohibition. In this case, the purposes supporting the sign ordinance are traffic safety and aesthetics. While these purposes may be accomplished more fully with a ban on off-site signs, the remaining provisions of the sign ordinance

---

**15.** Granite State has sought damages for the application of the unconstitutional sign ordinance to its applications. Therefore, this Court's conclusion that the amended ordinance moots Granite State's facial constitutional challenge does not affect Granite State's as applied challenge in so far as it seeks damages. *See Granite State II,* 351 F.3d at 1119.

limit the number, height, and size of signs, which also promote traffic safety and aesthetics. Third, the only evidence presented indicates that the City would have passed the sign ordinance even if it did not include a ban on off-site signs. Fourth, the sign ordinance after Section 122.4(h) is stricken remains complete with additional prohibitions and a permitting regime in place. Finally, the remaining ordinance is not more restrictive of speech because it allows off-site signs, which were previously not allowed under the City's sign ordinance, as long as they comply with height, area, and setback requirements.

### D. OTHER ALLEGED CONSTITUTIONAL VIOLATIONS

Both parties have briefly addressed two additional constitutional claims contained in Granite State's complaint:(1) a takings claim (count IX, XII); and (2) an equal protection claim (count X). To the extent that such claims are not moot, this Court concludes that Granite State's taking claims are not ripe and summary judgment is appropriate in favor of the City on Granite State's equal protection challenge.

#### 1. Granite State's Taking Claims are not ripe.

While it is not clear from the complaint or the briefs, it appears that Granite state asserts both a due process takings claim and a just compensation claim. However, the Eleventh Circuit abandoned the distinction between the two claims and held that the takings clause subsumes a substantive due process takings claim and only one cause of action exists. *See Villas of Lake Jackson Ltd. v. Leon County*, 121 F.3d 610, 614 (11th Cir.1997); *Corn v. City*

*of Lauderdale Lakes*, 95 F.3d 1066, 1072–75 (11th Cir.1996).

Cases involving constitutional issues must be ripe in order for a federal court to have subject matter jurisdiction. *See Greenbriar Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 (11th Cir.1989). In order to be ripe, a takings claim requires completion of two hurdles: (a) the final decision hurdle; and (b) the just compensation hurdle. *See Villas of Lake Jackson, Ltd.*, 121 F.3d at 614; *Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir.1994). In order to meet the final decision hurdle, an aggrieved party must appeal an administrative decision when the ordinance explicitly contains an appeal process. *See Reahard* 30 F.3d at 1416 n. 10. To meet the just compensation hurdle, all state procedures for just compensation must be utilized. *See id.* at 1416. Florida allows for an aggrieved party to pursue an inverse or reverse condemnation action so that a party may recover just compensation for a taking. *See id.* at 1417.

The record in this case indicates that Granite State neither appealed any denial of a sign permit nor pursued any state procedure to receive just compensation. Accordingly, this Court lacks subject matter jurisdiction over counts (IX and XII) because such claims are not ripe.[16]

#### 2. Section 122–4(h) is rationally related to a legitimate governmental objective.

This Court concludes that summary judgment is appropriate on Granite State's equal protection claim. Granite State argues that the major attraction exception to the off-site sign prohibition violates its right to equal protection because

---

16. Even if such claims were ripe and not moot, this Court would conclude that Section 122–4(h) does not constitute a taking because Section 122.4(h) was not unconstitutional and

destruction of one property right (or use) does not constitute a taking. *See Villas of Lake Jackson,* 121 F.3d at 614.

the City prefers major attraction off-site signs to other off-site signs. Granite State asserts this Court must apply strict scrutiny to the City's distinction between two types of commercial off-site signs because the distinction impinges on a fundamental right, the right to freedom of speech.

■■■ First, Granite State's assertion that strict scrutiny applies is not well taken. *See Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 344 n. 9, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986); *Don's Park Signing v. City of Clearwater*, 829 F.2d 1051, 1054 n. 10 (11th Cir.1987). For a distinction between two types of commercial speech, the City need only meet the rational basis standard of review. *See Posadas de Puerto Rico*, 478 U.S. at 344 n. 9, 106 S.Ct. 2968. Second, this Court concludes that differentiating between signs advertising a major tourist attraction in an area whose economy is based on tourism is rationally related to legitimate governmental interests. Indeed, the Supreme Court in Metromedia dealt with a similar distinction when it decided that San Diego could prefer on-site signs to off-site signs. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 512, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The plurality stated that:

> the city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere.

*Id.*

Such a justification and conclusion equally apply in this case. This Court concludes that Section 122.4(h) does not violate Granite State's right to equal protection.

### E. DAMAGES

■■■ Next, this Court's conclusion that Granite State's claims were moot did not moot Granite State's claim, if it has asserted any, for damages resulting from an unconstitutional application of Section 122.4(h) to its permit applications. But, even if this Court concluded that Section 122.4(h) was unconstitutionally applied to Granite State, Granite State would not be entitled to damages. Granite State's permit applications would have been rejected anyway for failing to meet other constitutional requirements contained in the sign ordinance, including height and area limitations as well as the prohibition against animated signs. Granite State cannot show any injury caused by any allegedly unconstitutional restriction in the sign ordinance. Accordingly, this Court grants summary judgment on Granite State's claims for damages.

### F. ATTORNEYS' FEES

■■■ Finally, this Court concludes that Granite State is not a prevailing party under 42 U.S.C. § 1988 and not entitled to its attorneys' fees. The relationship between Granite State and the City is unaltered as the result of this suit and Granite State is no closer to being permitted to erect its proposed billboards as a result of its challenge. *See Granite State II*, 351 F.3d at 1119; *Granite State I*, 348 F.3d at 1283–84. Even if Granite State were successful on its claims regarding Section 122.4(h), Granite State is not a prevailing party because " '[a] favorable judicial statement of law in the course of litigation that results in a judgment against the plaintiff does not suffice to render him [the plaintiff] a "prevailing party." ' " *See Granite State II*, 351 F.3d at 1119 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)).

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Summary Judgment (Dkt.# 26) is **GRANTED in part.**

2. Plaintiff's Cross Motion for Partial Summary Judgment (Dkt.# 29) is **DENIED**.

3. Defendants' suggestion of mootness (Dkts.# 56, 60) is **GRANTED**.

4. The Clerk is directed to enter a judgment in favor of the City, Bonfield and Friszolowski against Granite State.

5. The Clerk is directed to terminate all pending motions as moot and close this case.