[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17194
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-60804-BB

2051 LUSH APARTMENTS, LLC,
KEIRRA WALDON,

                                                    Plaintiffs-Appellants,

versus

CITY OF LAUDERHILL,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 2, 2017)

Before TJOFLAT, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

2051 Lush Apartments, LLC ("Lush") and Keirra Waldon ("Waldon") (together, "Appellants") appeal the District Court's order granting defendant City of Lauderhill's ("City") motion to dismiss.[1] Based on the alleged facial unconstitutionality of a Lauderhill city ordinance, Appellants brought an action in the Southern District of Florida for injunctive and declaratory relief,[2] damages pursuant to 42 U.S.C. § 1983, and relief pursuant to an unjust enrichment claim. They alleged the ordinance was facially unconstitutional because, in violation of the Fourth and Fourteenth Amendments, it allows City to search residential rental properties without consent, a valid search warrant, or probable cause. The District Court held otherwise. We affirm the District Court's order.

I.

The ordinance at issue requires landlords to acquire an occupational license by submitting an application and paying an application fee, to submit to a fire-safety inspection and to a "minimum housing quality standards and community appearance inspection," and to pay a penalty should a landlord rent a unit without first receiving an occupational license. *See* Lauderhill, Fl., Land Development Regulations, art. III, § 5.31.1 (hereinafter "the Ordinance"). Schedule M to the

---

[1] Appellants sought relief on behalf of themselves and two proposed classes—the "Tenant Class," represented by Waldon, and the "Landlord Class," represented by Lush.

[2] Appellants' claims for injunctive and declaratory relief were based in part on state law.

2

Ordinance, which provides the standards for conducting inspections regarding minimum housing quality, further states, in pertinent part,

> In the event a person who has common authority over a structure or premises regulated hereunder, shall not consent to an inspection, survey and examination of said structure or premises, said person shall be given the opportunity to reschedule such inspection, survey and examination for a time certain within ten (10) days of the inspector's initial contact. *Failure of the person exercising common authority over said structure, or premises, to thereafter consent to an inspection, survey and examination of the structure or premises, without just cause, shall be sufficient grounds and probable cause for a court of competent jurisdiction to issue a search warrant for the purpose of inspecting, surveying or examining said structure or premises.*

Lauderhill, Fl., Land Development Regulations, Land Development Regulation Schedules, Schedule M. § 1.8 (hereinafter "Schedule M") (emphasis added). Appellants contend that the italicized portion of Schedule M allows an end run around the requirement that sufficient probable cause be shown before an inspection warrant is issued. That is, the provision holds that failure to consent supplies the necessary probable cause and basing probable cause on a failure to consent, Appellants aver, is unconstitutional and renders the Ordinance facially invalid. Appellants therefore claim that Waldon's residence was subject to an unconstitutional search and that Lush paid unconstitutional inspection fees.

## II.

We review legal issues involving the constitutionality of a city ordinance *de novo* and construe any ambiguities "in a manner which avoids any constitutional

3

problems." *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1232 (11th Cir. 2006) (quoting *Southlake Prop. Assocs., Ltd. v. City of Morrow, Ga.*, 112 F.3d 1114, 1119 (11th Cir. 1997)).  Further, because Appellants challenge the constitutionality of the Ordinance on its face, they "must establish that no set of circumstances exists under which the [Ordinance] would be valid." *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987).

The probable cause standard to issue an inspection warrant differs from the standard applied in criminal cases.  *Camara v. Mun. Court of City and Cty. of S.F.*, 387 U.S. 523, 538, 87 S. Ct. 1727, 1735–36 (1967).  In seeking a warrant for an administrative inspection, probable cause "must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." [3]  *Id.* at 538, 87 S. Ct. at 1736.  These standards,

---

[3] In a case similar to the one before this Court, the Seventh Circuit expanded upon the reasons for a lower probable cause standard and set forth additional considerations that inform the reasonableness of a city's housing code enforcement framework:

> It is difficult to enforce [a local housing] code without occasional inspections; the tenants cannot be counted upon to report violations, because they may be getting a rental discount to overlook the violations, or . . . may be afraid of retaliation by the landlord or unaware of what conditions violate the code.  And it is impossible to rely on a system of inspections to enforce the code without making them compulsory, since violators will refuse to consent to being inspected.  In these circumstances the Fourth Amendment's requirement that all search warrants be supported by "probable cause" can be satisfied by demonstrating the reasonableness of the regulatory package that includes compulsory inspections.

*Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 578 (7th Cir. 1999) (citing *Camara*, 387 U.S. at 538–39, 87 S. Ct. at 1735–36).

moreover, need not "necessarily depend upon specific knowledge of the condition of a particular dwelling" and "will vary with the municipal program being enforced." *Id.*

The relevant standards for conducting an inspection are set out in the Ordinance (including Schedule M) and in §§ 933.20–30 of the Florida Statutes. We read these provisions in conjunction. *Cf. King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 574 (1991) ("[A] statute is to be read as a whole[] since the meaning of statutory language, plain or not, depends on context.") (citation omitted).

The District Court properly found that, read in combination, the Ordinance and relevant Florida Statutes provisions require a warrant for inspections, to be issued only upon a sufficient showing of probable cause. Although Schedule M does state that refusing to consent to an inspection—and then refusing to reschedule the inspection within ten days without just cause—is sufficient for a court to issue a warrant, this does not mean that a warrant will necessarily follow. *See* Schedule M. Florida Statutes § 933.21 makes clear that a warrant will only be issued upon a showing of probable cause. Fla. Stat. § 933.21. And to support this showing, an affidavit must either state that consent was sought and refused or explain why consent was not sought. *Id.* This implies that the issuing court will

5

*consider* the refusal of consent in making its determination; not that it will issue a warrant automatically upon refusal.

Section 933.22, moreover, provides that probable cause exists if, with respect to a particular place, "reasonable legislative or administrative standards for conducting a routine or area inspection are satisfied" or "if there is reason to believe a condition of nonconformity exists" which would violate an applicable law or regulation. *Id.* § 933.22. This provision implies that, unless a specific unlawful condition is believed to exist, the issuing court will consider whether reasonable standards have been satisfied—an endeavor presumably more holistic than merely looking to whether or not consent was provided.[4] The Florida Statutes provisions and the Ordinance can therefore, in at least a plausible set of circumstances, be interpreted to set forth reasonable legislative or administrative standards in compliance with the lower probable cause standard applicable to inspection warrants. Appellants thus cannot mount a successful facial challenge to the Ordinance. *See Salerno*, 481 U.S. at 746, 107 S. Ct. at 2101 ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

---

[4] To the extent that this presumption rests on an ambiguity, the ambiguity is to be construed "in a manner which avoids any constitutional problems." *Beaulieu*, 54 F.3d at 1232 (quoting *Southlake Prop. Assocs.*, 112 F.3d at 1119).

6

III.

Because the Ordinance is not facially unconstitutional, the District Court was correct in holding that Appellants' 42 U.S.C. § 1983 claim failed and in declining to exercise supplemental jurisdiction, via 28 U.S.C. § 1367(c), over Appellants' remaining state-law claims.

AFFIRMED.